

**MOLOLAMKEN**

Sara Margolis
MoloLamken LLP
430 Park Avenue
New York, NY 10022
T: 212.607.8172
F: 212.607.8161
smargolis@mololamken.com
www.mololamken.com

November 3, 2020

BY ECF

Honorable Paul A. Engelmayer
U.S. District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    *Antoine Ross v. Captain Dion Willis, et al.*, 16 Civ. 6704 (PAE) (KNF)

Dear Judge Engelmayer:

    We are *pro bono* counsel to Plaintiff Antoine Ross. We respectfully write in response to the pre-motion letter filed by Captain Dion Willis.[1]

**I.    Facts**

    This case concerns an incident that occurred on June 14, 2016 while Mr. Ross was a pre-trial detainee at the Otis Bantum Correctional Center (OBCC) on Rikers Island. Mr. Ross had a court date on the date of the incident. The evening prior, Mr. Ross had taken an antidepressant with strong sedative effects that had been prescribed to him by New York City Department of Correction (DOC) medical staff.

    OBCC staff attempted to wake Mr. Ross at around 4:00 a.m. to attend court; however, Mr. Ross could not get up because of the medication's sedative effects. Captain Willis and a team of correction officers in riot gear were then summoned to Mr. Ross's cell. Mr. Ross was lying facedown on his bed inside his cell. The officers directed Mr. Ross to leave his cell. On a video taken of the incident, Mr. Ross can be heard asking sleepily why he had to leave and telling the officers that he is "on drugs." Captain Willis told Mr. Ross that, if he did not comply with the officers' instructions, Captain Willis would spray Mr. Ross with chemical agent.

    Before spraying Mr. Ross, Captain Willis did not determine whether Mr. Ross had any contraindications that would preclude the use of chemical agent against him. (Mr. Ross, in fact, has asthma, which he has had since childhood, and DOC policy prohibits using pepper spray against asthmatic detainees in most circumstances other than emergencies.) Captain Willis also did not attempt to contact DOC mental health staff, to assemble an extraction team that could safely remove Mr. Ross from his cell, or to explore any other way to resolve the situation.

    Once Captain Willis deployed the chemical agent, the officers handcuffed Mr. Ross and escorted him out of his cell. The video captures him doubled over, coughing, wheezing, and eventually screaming in distress. After walking part-way through the cell block, Mr. Ross fell to his knees and protested that he could not breathe. The officers put Mr. Ross face-down on a stretcher and wheeled him toward the decontamination showers. While on the stretcher, Mr.

---

[1] Mr. Ross notes that Captain Willis's pre-motion letter was untimely under § 3(H) of the Court's Individual Rules.

Hon. Paul A. Engelmayer - 2 - November 3, 2020

Ross began to shake violently. Several hours later, Mr. Ross was taken to the medical clinic. He was taken to court later that day.

DOC investigated the incident and concluded that Captain Willis violated DOC policy in three different ways: (1) by "not assembling a proper extraction team;" (2) by "not notifying mental health services" that Mr. Ross was refusing to come out of his cell; and (3) by failing to request Mr. Ross's "contra indicators" from the Assistant Deputy Warden before using chemical agent on Mr. Ross. The report concluded that Captain Willis's failure to follow DOC's use-of-force policy "could have led to serious injuries or complications associated with being exposed to the chemical agent." Captain Willis was disciplined by DOC for this incident.

## II. Captain Willis's Proposed Summary Judgment Motion

Summary judgment is inappropriate because there are factual disputes as to whether the force Captain Willis used was reasonable, and because he is not entitled to qualified immunity. Mr. Ross's excessive-force claim should be decided by a jury. Moreover, because Captain Willis has not moved for summary judgment on Mr. Ross's other claims,[2] a trial in this case will be necessary in any event. The Court should therefore deny Captain Willis's motion summarily or set an expedited briefing schedule so that this case can proceed towards trial.

### A. Excessive Force

Use of force against a pretrial detainee is excessive under the Fourteenth Amendment if it is "objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Whether force is objectively unreasonable is informed by "the relationship between the need for the use of force and the amount of force used"; "any effort made by the officer to temper or to limit the amount of force"; and "the severity of the security problem at issue." *Id.* "Given the fact-specific nature of the inquiry," summary judgment is not warranted "unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).

In his pre-motion letter, Captain Willis appears to argue only that pepper-spraying Mr. Ross was necessary because Mr. Ross posed a "security risk for the officers and the facility." Dkt. 135 at 3. But the defendants—including Captain Willis himself—conceded at deposition that they did not perceive Mr. Ross to be a threat to themselves, Mr. Ross himself, or other inmates. Other facts support that conclusion: The video shows five officers inside the cell with Mr. Ross, all dressed in riot gear, including bulletproof vests and gas masks. Mr. Ross remained lying face-down on his bed until he was forcibly removed from his cell. And Captain Willis admitted that Mr. Ross's refusal to present his hands for cuffing, or to leave his cell for court,

---

[2] Although Mr. Ross's operative *pro se* complaint asserts First, Fourth, and Eighth Amendment claims, *see* Dkt. 59 at 1-2, as the other defendants recognize, the facts pled support, at a minimum, Fourteenth Amendment excessive-force and deliberate-indifference claims. *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); Dkt. 134 at 3 (discussing deliberate-indifference claim). Captain Willis does not seek summary judgment on the deliberate-indifference claim. *See* Dkt. 135. While the Defendants did not seek to meet and confer with Mr. Ross about his claims before filing these pre-motion letters, Mr. Ross is prepared, if necessary, to amend his complaint or otherwise work with Defendants and the Court to clarify which claims he will pursue at trial.

Hon. Paul A. Engelmayer - 3 - November 3, 2020

was not an emergency. Under these circumstances, a reasonable jury could easily conclude that Mr. Ross was not a "security risk" and that Captain Willis's use of force was excessive.

Although Captain Willis does not mention any of the other *Kingsley* factors, they, too, show that a jury could reasonably find his conduct was unreasonable. Captain Willis made no effort to "temper or to limit the amount of force" he used. *Kingsley*, 576 U.S. at 397. To the contrary, he ignored DOC policies that provide alternatives to, and restrictions on, the use of chemical agent in this situation. And factual disputes also exist about whether the amount of force Captain Willis used was reasonable and proportionate, under DOC's own policies or otherwise. Such disputes include whether the officers could have simply grabbed Mr. Ross's arm and whether use of the chemical agent was excessive based on Captain Willis's proximity to Mr. Ross. *See Brown v. City of New York*, 798 F.3d 94, 103 (2d Cir. 2015) (distance at which pepper spray used on arrestee was material disputed fact precluding summary judgment).

Given that Mr. Ross was lying in bed sedated by medication, that his only "resistance" to orders was a reluctance to go to court, and that Defendants made little effort to gain Mr. Ross's compliance before pepper-spraying him, a reasonable jury could easily conclude that Defendants used force far disproportionate to the situation at hand.

### B. Qualified Immunity

Captain Willis is also not entitled to qualified immunity. The Second Circuit has clearly established that pepper spray amounts to excessive force if used "against an arrestee who . . . poses no immediate threat to the arresting officer." *Tracy v. Freshwater*, 623 F.3d 90, 98 (2d Cir. 2010).[3] The court of appeals has subsequently made clear its holding does not depend on whether the individual is already handcuffed. *Jones v. Treubig*, 963 F.3d 214, 237-38 (2d Cir. 2020); *Soto v. Gaudett*, 862 F.3d 148, 158 (2d Cir. 2017). As *Jones* concluded, it was therefore clearly established at least as of April 2015 that an officer cannot use "significant force . . . against an individual who is no longer resisting ***or posing a threat to the officers or others***." 963 F.3d at 240 (emphasis added). District courts often apply *Tracy* to deny qualified immunity on excessive-force claims in similar circumstances.[4]

As Captain Willis testified, Mr. Ross posed no immediate threat to the officers or others. Mr. Ross was "confined" in his cell, with four officers inside and another in the doorway. Captain Willis did not consider the situation an emergency. DOC policy not only permitted but ***required*** Captain Willis to take certain alternative steps before using force against Mr. Ross. A reasonable jury could thus conclude that Captain Willis violated Mr. Ross's clearly established rights, and that it was objectively unreasonable for Captain Willis to believe otherwise. As a result, Captain Willis is not entitled to summary judgment on his qualified-immunity defense.

---

[3] While *Tracy* concerned Fourth Amendment claims, the standard for Fourteenth Amendment excessive-force claims by pretrial detainees is the same. *See Kingsley*, 576 U.S. at 397.

[4] *See Girbes-Pierce v. City of New York*, No. 16 Civ. 7510, 2019 WL 1522631, at *5 & n.5 (S.D.N.Y. Apr. 9, 2019), *aff'd*, 803 F. App'x 509 (2d Cir. 2020) (arrestee "confined"); *Marlin v. City of New York*, No. 15 Civ. 2235, 2016 WL 4939371, at *12 (S.D.N.Y. Sept. 7, 2016) (no "safety threat to officers"); *Garcia v. Dutchess County*, 43 F. Supp. 3d 281, 298 (S.D.N.Y. 2014) (jury could find arrestee "largely subdued on the floor" when tased).

Hon. Paul A. Engelmayer — - 4 - — November 3, 2020

                          Respectfully submitted,

                          /s/ Sara E. Margolis
                          Sara E. Margolis

CC:  All counsel of record via ECF