

Sara Margolis
MoloLamken LLP
430 Park Avenue
New York, NY 10022
T: 212.607.8172
F: 212.607.8161
smargolis@mololamken.com
www.mololamken.com

November 3, 2020

BY ECF

Honorable Paul A. Engelmayer
U.S. District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *Antoine Ross v. Captain Dion Willis, et al.*, 16 Civ. 6704 (PAE) (KNF)

Dear Judge Engelmayer:

      We are *pro bono* counsel to Plaintiff Antoine Ross. We respectfully write in response to the pre-motion letter filed by Defendants Sadoc Genoves and Rochaurd George. Dkt. 134.

## I.    Facts

      This case arises out of a June 14, 2016 incident that occurred while Mr. Ross was a pretrial detainee on Rikers Island. Early that morning, New York City Department of Correction (DOC) staff attempted to wake Mr. Ross to attend a scheduled court date. However, Mr. Ross would not get up because he was sedated by antidepressant medication that DOC staff had prescribed to him. Once Mr. Ross refused to get up, correction officers in riot gear—including all three Defendants—were summoned to Mr. Ross's cell.

      When Defendants arrived, Mr. Ross was lying face-down on his bed inside his cell. On a video recording of the incident, Mr. Ross can be heard asking sleepily why he had to leave his cell and telling the officers that he is "on drugs." Captain Willis warned Mr. Ross that, if he did not comply, Captain Willis would spray him with chemical agent. Approximately ten seconds later, Captain Willis sprayed Mr. Ross in the face with "MK-9" pepper spray. Before taking that action, none of the Defendants tried to determine whether Mr. Ross had any medical conditions that would contraindicate the use of chemical agent. (In fact, Mr. Ross has suffered since childhood from asthma, and DOC policy prohibits using pepper spray against asthmatic detainees in most circumstances other than emergencies.) Defendants also did not attempt to contact DOC mental health staff, to assemble an extraction team that could safely remove Mr. Ross from his cell, or to explore any other way to resolve the situation without resorting to force.

      After Captain Willis sprayed Mr. Ross, the officers handcuffed him and escorted him out of his cell. The video captures him doubled over, coughing, wheezing, and eventually screaming in distress. After walking partway through the cell block, Mr. Ross fell to his knees and protested that he could not breathe. The officers put Mr. Ross face-down on a stretcher and wheeled him toward the decontamination showers. While on the stretcher, Mr. Ross began to shake violently. Several hours later, Mr. Ross was taken to the medical clinic. He was taken to court later that day.

      DOC staff investigated the incident and found that Captain Willis violated DOC policy by "not assembling a proper extraction team;" by "not notifying mental health services" about

the situation; and by failing to request Mr. Ross's "contra indicators" (*i.e.*, his medical information) before using chemical agent. The investigation concluded that Captain Willis's actions "could have led to serious injuries or complications associated with being exposed to the chemical agent." Each of the three Defendants in this action was trained both on those policies and on the need to intervene if they see a violation of those policies taking place.

## II. Proposed Summary Judgment Motion by Officers Genoves and George

Summary judgment is inappropriate on the failure-to-intervene claims because there remain genuine disputes of material fact as to whether Officers Genoves and George should have known that Captain Willis was about to violate Mr. Ross's constitutional rights. They, moreover, are not entitled to qualified immunity. Mr. Ross's claims can and should be decided by a jury. The Court should therefore either deny Defendants' motion summarily or set an expedited briefing schedule to resolve their motion quickly so that this case can proceed to trial.[1]

### A. Failure-To-Intervene Claims

An officer is liable under Section 1983 if he "observes excessive force is being used or has reason to know that it will be," *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001), and does not intervene despite having a realistic opportunity to do so, *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). "Whether the officer had a 'realistic opportunity' to intervene is normally a question for the jury, unless, 'considering all the evidence, a reasonable jury could not possibly conclude otherwise.'" *Terebesi v. Torreso*, 764 F.3d 217, 244 (2d Cir. 2014). The Second Circuit has instructed that district courts must not apply a "hard-and-fast temporal cutoff" in deciding whether a defendant has an opportunity to intervene. *Figueroa v. Mazza*, 825 F.3d 89, 107 (2d Cir. 2016).

Under these standards, a jury could decide whether Officers Genoves and George "ha[d] reason to know" Captain Willis would use excessive force and act with deliberate indifference. *Curley*, 268 F.3d at 72. Both testified that they heard Captain Willis warn Mr. Ross that he was going to spray him with chemical agent. They also testified that they did not feel threatened by Mr. Ross, or think that he was a threat to other inmates. They both admitted to receiving training on DOC's anticipated-use-of-force policy, which not only provided for alternatives to the use of chemical agent in this situation, but *required* them. And they have not claimed that there were any "obstacles that might have hindered their ability to intercede." *Figueroa*, 825 F.3d at 108.

Citing an unpublished opinion, Officers Genoves and George argue they had "no duty to intervene" until after a constitutional violation "had occurred." Dkt. 134 at 2 (citing *Cerbelli v.*

---

[1] Mr. Ross's *pro se* complaint can also be read to allege, in the alternative, that Officers Genoves and George are liable because "with knowledge of the illegality," they "participate[d] in bringing about a violation of [Mr. Ross's] rights" by "helping [Captain Willis] to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001); *see, e.g.*, *Rizk v. City of New York*, --- F. Supp. 3d ----, 2020 WL 2734361, at *14 (E.D.N.Y. May 22, 2020) (allowing alternative participant-liability and failure-to-intervene-liability theories to proceed past summary judgment). Officers Genoves and George have not requested leave to move for summary judgment on any claim by Mr. Ross other than his failure-to-intervene claim. They also have not asserted that their motion would resolve this case completely as to them. Thus, because a trial will be required in any event to resolve Mr. Ross's other claims, this Court should avoid if possible protracted summary judgment practice on the failure-to-intervene claim.

*City of New York*, No. 99 Civ. 6846, 2008 WL 4449634, at *11 (E.D.N.Y. Oct. 1, 2008)). That argument makes no sense: If state actors need not intervene to stop a constitutional violation until *after* that violation has begun, their intervention will serve little purpose. Nor can their argument be squared with the rule that an officer is liable where he "observes excessive force is being used *or has reason to know that it will be*." *Curley*, 268 F.3d at 72 (emphasis added).[2] And while Officers Genoves and George urge that Captain Willis's use of force did not last long enough for them to intervene, that is precisely the sort of hard-and-fast temporal cutoff that the Second Circuit has rejected. *Figueroa*, 825 F.3d at 107. Moreover, that argument misses the mark because, regardless of how long the pepper-spray use lasted, the relevant inquiry is whether they had enough time to intervene when they knew Captain Willis was about to use pepper spray. *See Curley*, 268 F.3d at 72.

Officers Genoves and George also argue that they had no duty to intervene because the force Captain Willis used was not objectively unreasonable. Dkt. 134 at 2-3. But, as discussed in more detail in Mr. Ross's response to Captain Willis's pre-motion letter, factual disputes abound regarding whether Captain Willis's force was reasonable. Defendants' own statements, along with other evidence, show that disputes exist about whether the decision to pepper spray a groggy, prone detainee in the face without first checking his medical conditions or otherwise following DOC policy was a reasonable one. *See also* Ross Resp. to Willis Ltr., Dkt. 137 at 2-3.

Finally, Officers Genoves and George argue that no failure-to-intervene claim could be based on Captain Willis's deliberate indifference to Mr. Ross's health because "it was not unreasonable for Defendant Willis to spray [Mr. Ross] without first checking [his] medical history." Dkt. 134 at 3. As their cited case recognizes, however, it is unreasonable not to mitigate a situation that "the defendant-official *knew, or should have known*" to "pose[ ] an excessive risk to health or safety." *Dollard v. City of New York*, 408 F. Supp. 3d 231, 237 (E.D.N.Y. 2019) (quotation omitted). Because, by all Defendants' admission, Mr. Ross posed no immediate danger, and because DOC policies required Captain Willis to check Mr. Ross's medical records in precisely this situation, a reasonable jury could find that Defendants should have taken steps to find out whether pepper-spraying him in the face posed an excessive risk to his health (which it did). Summary judgment on that claim is therefore unwarranted as well.

### B. Qualified Immunity

Nor are Officers Genoves and George entitled to qualified immunity. They claim qualified immunity only derivatively. *See* Dkt. 134 at 3. For the same reasons Captain Willis is not entitled to qualified immunity—because a reasonable jury could conclude that it was clearly established that Captain Willis's actions violated Mr. Ross's constitutional rights, and the circumstances made it objectively unreasonable to believe otherwise, Dkt. 137 at 3—Officers Genoves and George are not either. *See, e.g.*, *Ricciuti v. NYC Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) (analyzing and denying qualified immunity for failure-to-intervene claim).

---

[2] Defendants' cited cases merely concern situations unlike this one where the use of force occurred without warning in an unpredictable situation. *See O'Neill v. Krzeminski*, 839 F.2d 9, 10 (2d Cir. 1988) (officer punched handcuffed arrestee in response to provocative comments); *Cerbelli*, 2008 WL 4449634, at *2 (man pacing around police precinct brandishing knife and screaming "shoot me").

Hon. Paul A. Engelmayer                                - 4 -                                November 3, 2020

                                                                          Respectfully submitted,

                                                                          <u>/s/ Sara E. Margolis</u>
                                                                          Sara E. Margolis


CC:  All counsel of record via ECF