UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x

ANTOINE ROSS,

                     Plaintiff,

              - against -

CAPTAIN DION WILLIS,
CORRECTION OFFICER GEORGE #732
CORRECTION OFFICER GENOVES #17683,
AND CITY OF NEW YORK
                    Defendants.
------------------------------------------x

**DEFENDANT WILLIS' STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1**

**Docket #16CV06704 (PAE)(KNF)**

Defendant Dion Willis, by his attorneys, Frankie and Gentile, P.C., submits this Statement of Undisputed Material Facts, pursuant to Local Rule 56.1, in support of his motion for a Decision and Order pursuant to Fed. R. CIV. P. 56 awarding summary judgment in defendant Willis' favor and awarding defendant Willis such other and further relief as this Court may deem just, equitable and proper.

Defendant CAPTAIN DION WILLIS, by his attorneys, Frankie and Gentile, P.C., submits this Statement of Undisputed Material Facts, pursuant to Local Civil Rule 56.1 in support of his motion for a Decision and Order pursuant to Fed. R. CIV. P. 50 (b) awarding Summary judgment in defendant Willis' favor and awarding defendant Willis such other and further relief as this Court may deem just, equitable and proper.

PLEADINGS AND PROCEDURAL HISTORY

1.      Plaintiff Antoine Ross, while an inmate on Rikers Island, New York, commenced this action on August 25, 2016 (ECF #2) alleging a violation of his constitutional rights under the Fourth Amendment to be safe and secure in his person when he was pepper sprayed.

2.      Plaintiff filed Amended Complaints on June 2, 2017 (ECF #14); on November 1, 2017, 2nd Amended Complaint (ECF #34); on December 28, 2017, 3rd Amended Complaint (ECF #39), on January 5, 2018, 4th Amended Complaint (ECF #40), and on April 3, 2019, 5th Amended Complaint (ECF #59).

3.      On March 27, 2019 the Court dismissed with prejudice, Plaintiff's claims against the defendant City of New York (ECF # 54).

4.      On April 1, 2019 defendant Willis filed an Answer with the 4th Amended Complaint with cross-claims against the City of New York (ECF # 58). On September 26, 2019 defendant Willis filed an Answer to the 5th Amended Complaint with cross-claims against the City of New York (ECF # 79).

5.      On October 3, 2019 defendants Genoves and George filed an Answer to the Complaint (ECF # 83).

6.      On October 10, 2019 the City of New York filed an Answer to defendant Willis' cross-claims. (ECF #84).

7.      On February 11, 2020 Pro Bono Counsel appeared on behalf of Plaintiff Antoine Ross (ECFs #107, #108, and #109).

8.      Discovery was completed on October 15, 2020 with depositions being conducted remotely due to the COVID-19 pandemic.

STATEMENT OF UNDISPUTED FACTS

1.      On June 14, 2016 Plaintiff Antoine Ross was an inmate (detainee) at the Otis Bantum Correctional Center ("OBCC") on Rikers Island, New York.  (Joint Statement of Stipulated Facts (hereinafter "JSSF") at No. 3).

2.      Plaintiff Ross is a gang member (BLOODS) and a designated Red Card I.D. (known weapons carrier) (New York City Department of Correction "B" form annexed at Exhibit "D" DEF 0089).

3.      On June 14, 2016 Dion Willis was a uniform employee of the New York City Department of Correction and held the rank of Captain.  He was appointed to the position of Correction Officer on June 2, 2005 and promoted to Captain on January 17, 2014.

4.      On June 14, 2016 Defendant Rochaurd George was a uniform employee of the New York City Department of Correction in the rank of Correction Officer.  He was appointed to the position of Correction Officer on August 27, 2009.

5.      On June 14, 2016, Defendant Sadoc Genoves was a uniform employee of the New York City Department of Correction in the rank of Correction Officer.  He was appointed to the position of Correction Officer on November 10, 2005.

6.      On June 14, 2016, Defendants Willis, George and Genoves were assigned to the Otis Bantum Correctional Center command.

7.      On June 14, 2016, Plaintiff Antoine Ross had a scheduled court appearance concerning a pending armed robbery charge in Bronx County, New York.  (JSSF at No. 22), Deposition excerpt of Plaintiff Ross at 159-160).

8.      On June 14, 2016, Plaintiff Antoine Ross was housed in Housing Area 1 West, Cell #30, an Enhanced Supervision Housing area ("ESH") at OBCC.  (JSSF at No. 4).

9.      Enhanced Supervision Housing houses inmates who pose significant threats to the safety and security of other inmates (R. of N.Y.S. tit. 40, §1-16(a).

10.     Inmates are provided a due process hearing prior to being placed in ESH, to determine if such placement is appropriate and justified.  (Deposition excerpts of Plaintiff Ross at 46 and 171 annexed as Exhibit "D" and R. of N.Y.S. tit. 40, §1-16 annexed as Exhibit "L").

11.     Inmates with scheduled court appearances are awakened at approximately 4:00 a.m. - 4:30 a.m. and are afforded an opportunity to gather their legal papers, eat breakfast and shower prior to their court appearance.  At approximately 6:00 a.m. - 6:30 a.m., inmates are escorted to the jail intake area where they are escorted onto buses and secured, whereupon they are transported to their scheduled court appearance.  (Exhibit "F" at 50).

**Initial Refusal to go to Court:**

12.     On the morning of Jun 14, 2016, an unidentified correction officer informed the area supervisor, non-party DOC Captain Latonia Monroe, that despite repeated attempts, officers were unable to gain plaintiff's compliance that plaintiff refused to go to court.  Ex. "E" (Monroe Dep. at 74).

13.     Captain Monroe went to plaintiff's cell to speak with him about his refusal.  Ex. "E" (Monroe Dep. at 77).

14.     When Captain Monroe arrived at plaintiff's cell, she saw that plaintiff was lying on his bed.  Ex. "G" (Monroe Dep. at 78).

15.     Plaintiff talked to Captain Monroe, although he did not give any additional information other than that he didn't want to go to court.  Ex. "E" (Monroe Dep. at 77).

4

16.     Captain Monroe left Plaintiff's cell and continued her duties, but she returned to his cell and made additional attempts to gain his compliance in attending his court appearance. Ex. "E" (Monroe Dep. at 75 and 78).

17.     Each time Plaintiff communicated that he did not want to go to court and yelled from his cell, "no, I'm not going." Ex. "E" (Monroe Dep. at 76-80).

**Refusal on Video:**

18.     After Plaintiff continued to refuse, Captain Monroe informed the tour commander of the issue and returned to Plaintiff's cell to record his refusal with Correction Officer Davis. Ex. "E" (Monroe Dep. at 79 and 91); Ex. "G" (Monroe Use of Force Witness Report, DEF 0020.)

19.     This process is called refusal on video. Ex. "F" (Stukes Dep. at 69-70).

20.     DOC captures refusals on video in order to explain to the court why an inmate is either late or does not appear for his scheduled court appearance. Ex. "F" (Stukes Dep. at 70-71).

21.     The Tour Commander, Assistant Deputy Warden Sherma Dunbar, activated an institutional alarm (placing the facility in alarm status) and dispatched a "probe team" to OBCC Housing Area 1 West to gain Inmate Ross' compliance in being produced for court. Ex. "E" (Monroe Dep. excerpts at 95, DEF __ 0020).

22.     DOC is a paramilitary organization with relevant rank structure in ascending order being: Correction Officer, Captain, Assistant Deputy Warden. Ex. "E" (Monroe Dep. excerpt at 23, Ex. "F" Stukes Dep. excerpt at 159).

23.     A probe team consists of 2-4 correction officers and one captain. (JSSF at No. 30).

24.     The probe team included defendants Captain Willis, Correction Officers George and Genoves and two non-party correction officers Jordan and Philips. (JSSF at No. 31).

25.    Each probe team member wore probe team equipment which included a helmet, protective vest, baton and gas mask. Captain Willis was equipped with DOC issued handheld chemical agent (pepper spray) MK-9. (JSSF at No. 33).

26.    Probe team members are not privy to inmates' medical history or medical conditions (JSSF at No. 36, Ex. "H"; Dep. excerpts of Defendant Willis at 117, Ex. "F"; Dep. excerpts of Chief Stukes at 158-159).

27.    Members of the probe team gave Inmate Antoine Ross several direct orders to get up and get ready for his court appearance. Inmate Ross refused these orders. (JSSF at No. 37).

28.    Members of the probe team took hold of Inmate Ross' wrist in an effort to handcuff him, but each time Ross pulled away and made comments which included: "do not touch me bro," "what's wrong with you, son," "what's wrong with you, boy; is you crazy." (JSSF at 40, Ex. "I" Ross Dep. excerpt at 101-103 and 184, Ex. "H" Willis Dep. excerpts at 89).

29.    Inmate Ross was given a final advisement that if he did not comply with the probe team in producing him for court, that he would be sprayed with chemical agent (pepper spray) (JSSF at No. 41 and 42).

30.    Inmate Ross continued his non-compliance and stated "spray me for what" and "y'all niggas is crazy son, y'all niggas is crazy (JSSF at 43).

31.    When plaintiff continued his refusal to comply, Captain Willis deployed a one two second spray of chemical agent (pepper spray) toward Inmate Ross. (JSSF at No. 44).

32.    After Captain Willis sprayed Ross, C.O. George was able to handcuff Ross without further incident.

33.    It was not until after Ross was sprayed with the chemical agent (pepper spray) that he informed members of the probe team that he was asthmatic. (JSSF at No. 46).

34.   Plaintiff Ross testified that he did not inform members of the probe team that he had asthma when warned that chemical agents (pepper spray) would be utilized because "it slipped my mind." (Ex. "I" Ross Dep. excerpt at 185).

35.   Ross was escorted from his cell when the pepper spray was deployed, which is the first step of the decontamination process.

36.   When Ross claimed he couldn't walk and dropped to his knees during the escort, staff assisted him onto a gurney and wheeled him to the intake decontamination shower.  (JSST at Nos. 49-51, Ex. "I" Ross Dep. excerpts at 114-115).

37.   Ross was placed in a decontamination shower and permitted to shower until he stated he was relieved.  Ex. "I" Ross Dep. excerpt at 76, JSSF at No. 56.

38.   After showering, Plaintiff Ross was provided with a fresh set of clothing and logged into the medical clinic at 7:10 a.m. to await medical attention.  (Ex. "J" DEF 0121).

39.   Plaintiff Ross was examined by Physician's Assistant Larry Blackmore, who noted the following:   patient in no distress, no o/c noted on him, no injury noted, no treatment indicated.  (Ex. "J" DEF 0121).

40.   Plaintiff Ross was deemed fit for court and transported to his court appearance.  (Ex. "J" DEF 0121, JSSF at No. 60.

Dated:   Mineola, New York
         December 21, 2020

Respectfully submitted,

FRANKIE & GENTILE, P.C.

James G. Frankie

James G. Frankie, Esq.
*Atty. for Defendant Dion Willis*
1527 Franklin Avenue, Suite 104
Mineola, New York  11501