UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

ANTOINE ROSS,

                              Plaintiff,

-against-

CAPTAIN DION WILLIS, ET AL.,

                              Defendants.

**DEFENDANTS GEORGE AND GENOVES STATEMENT OF MATERIAL FACTS PURSUANT TO SDNY LOCAL CIVIL RULE 56.1**

16 Civ. 6704 (PAE) (KNF)

------------------------------------------------------------------x

       Defendants Correction Officer Sadoc Genoves and Rochaurd George submit this statement pursuant to Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, to set forth the material facts as to which they contend there is no genuine issue to be tried. The undisputed facts listed herein incorporate by reference the parties' joint statement of facts, filed on December 10, 2020. (ECF No. 144.)

**Plaintiff's Background:**

1. As of January 22, 2016, Plaintiff was classified as a maximum custody inmate. (Arraignment and Classification Risk Screening Form, Declaration of Joshua A. Weiner ("Weiner Decl."), Ex. K at DEF_0039.)

2. Plaintiff faced charges of robbery in the first degree. (Deposition of Antoine Ross, taken on September 21, 2020, Weiner Decl., Ex. A at 21:3-19, 158:22 – 159:6 ("Ross Dep.").)

**Plaintiff Refuses Initial Attempts to Produce Him to Court.**

3. On June 14, 2016, Plaintiff had a scheduled court appearance. (Ross Dep., Weiner Decl., Ex. A at 49:19-20.)

4. Captain Monroe and other officers informed Plaintiff that he had to get up because he had a court hearing, but Plaintiff refused. (Deposition of Latonia Monroe, taken on July 9, 2020, Weiner Decl., Ex. E at 74:12-22; 77:11-25 ("Monroe Dep.").)

5. Plaintiff did not give any additional information in response to Captain Monroe regarding why he was refusing to go to court. (Monroe Dep., Weiner Decl., Ex. E at 74:23 – 75:10, 77:20-25.)

**A Probe Team is Summoned, But Plaintiff Physically Resists and is Sprayed:**

6. On June 14, 2016, Plaintiff knew that he could not choose not to go to court. (Ross Dep., Weiner Decl., Ex. A at 62:8-14.)

7. Plaintiff knew that whenever he had a scheduled court date, it was pursuant to a court order requiring him to appear. (Ross Dep., Weiner Decl., Ex. A at 187:22 – 188:1.)

8. Defendant Genoves perceived Plaintiff's refusals to comply with Defendant Willis's orders as "somewhat of a threat" because he did not know Plaintiff's intentions. (Deposition of Sadoc Genoves, taken on August 6, 2020, Weiner Decl., Ex. C at 88:17 – 89:7 ("Genoves Dep.").)

9. Plaintiff pulled his arm away when a member of the probe team attempted to place him in handcuffs. (Ross Dep., Weiner Decl., Ex. A at 103:2-11; Deposition of Dion Willis, taken on July 14, 2020, Weiner Decl., Ex. D at 89:16-23 ("Willis Dep.").)

10. After Defendant Willis warned Plaintiff, Defendant George explained that he still had reason to believe that Defendant Willis might not spray Plaintiff even if Plaintiff did not comply. (Deposition of Rochaurd George, taken on July 10, 2020 Weiner Decl., Ex. B at 146:12 – 147:24 ("George Dep.").)

11. After the warning, Defendant Willis gave Plaintiff an opportunity to comply with his orders. (Handheld Video at 1:21-1:29;[1] George Dep., Weiner Decl., Ex. B at 147:25 – 148:22; Willis Dep., Weiner Decl., Ex. D at 121:11-25.)

12. Plaintiff was annoyed by the warning. (Ross Dep., Weiner Decl., Ex. A at 102:7-19.)

13. When Plaintiff continued not to comply, Defendant Willis deployed one, short, two-second burst of chemical agent. (Handheld Video at 1:30-1:31; Ross Dep., Weiner Decl., Ex. A at 110:18 – 111:4.)

14. The Use of Force Directive 5006R-C, which was in effect on June 14, 2016, states that "use non-contact control techniques such as hand-held chemical agents" is a lesser degree of force that should be used before physical contact. (Use of Force Directive 5006R-C, Weiner Decl., Ex. L at DEF_0066.)

**The Effects of MK-9:**

15. According to Plaintiff, he began feeling the effects of the chemical agent, including coughing, burning eyes, choking, dizziness, chest tightness, wheezing, and shortness of breath. (Ross Dep., Weiner Decl., Ex. A at 70:8 – 71:12, 112:25 – 113:5.)

16. The Chemical Agents Directive 4510R-G, which was in effect on June 14, 2016, lists the anticipated effects of Oleoresin Capsicum ("OC") chemical agent as (1) swelling of the mucous membranes; (2) immediate involuntary closing of the eyes; (3) uncontrollable coughing; (4) gagging; (5) gasping for breath; and (6) sensation of intense burning of the skin and the mucous membranes inside the nose and the mouth. (Chemical Agents Directive 4510R-G, Weiner Decl., Ex. J at DEF_0808.)

---

[1] On December 11, 2020, the parties provided the Court with the handheld video. As such, defendants are not providing the Court with a separate copy as part of its motion papers.

17. While Plaintiff was handcuffed by Defendants George and Genoves, he stated, for the first time, that he was asthmatic. (Handheld Video at 1:58; Ross Dep., Weiner Decl., Ex. A at 111:13 – 112:1, 185:23 – 186:2.)

**Decontamination Process:**

18. Removing Plaintiff from his cell was part of the decontamination process. (Chemical Agents Directive 4510R-G, Weiner Decl., Ex. J at DEF_0817; Willis Dep., Weiner Decl., Ex. D at 156:7-13.)

19. Plaintiff did not request medical attention during his interaction with Defendants. (Handheld Video at 00:00-9:31.)

20. Plaintiff chose to stop showering by informing a DOC staff member that he was relieved. (Ross Dep., Weiner Decl., Ex. A at 76:9-22.)

21. The probe team did not escort Plaintiff to the medical clinic because they were the officers who were present when he was sprayed. (Ross Dep., Weiner Decl., Ex. A at 76:10-19, 78:10-13, 80:11-16; George Dep., Weiner Decl., Ex. B at 56:2-15; Genoves Dep., Weiner Decl., Ex. C at 141:4-23; Willis Dep., Weiner Decl., Ex. D at 193:8-15, 194:13-21.)

22. Instead, a fellow officer escorted Plaintiff to the medical clinic. (Ross Dep., Weiner Decl., Ex. A at 80:8-16.)

**Plaintiff's Lack of Damages:**

23. No medical professional has told Plaintiff that the June 14, 2016, incident made his asthma more severe. (Ross Dep., Weiner Decl., Ex. A at 204:1-3.)

24. A medical record about an asthma follow up appointment from August 11, 2016, states that Plaintiff's asthma was "well controlled." (NYC Health & Hospitals August 11, 2016 Progress Note, Weiner Decl., Ex. G at DEF_0291 – DEF_0292.)

25. On November 10, 2016, at Plaintiff's three month follow up appointment, the medical record states that Plaintiff's asthma was "well controlled." (NYC Health & Hospitals November 10, 2016, Weiner Decl., Ex. H at DEF_0189 – DEF_0190.)