16 CIV 6704 (PAE) (KNF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTOINE ROSS,

Plaintiff,

-against-

CAPTAIN DION WILLIS, ET AL.,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**JAMES E. JOHNSON**
*Corporation Counsel of the City of New York*
*Attorney for Defendants George and Genoves*
*100 Church Street*
*New York, N.Y. 10007*
*Of Counsel: Joshua A. Weiner*
*Tel: (212) 356-2249*
*Matter No.: 2017-015664*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS ........................................................................................... 2

STANDARD OF REVIEW .......................................................................................... 5

ARGUMENT

    POINT I:    DEFENDANTS ARE NOT LIABLE FOR FAILURE TO INTERVENE ........................................... 6

        A.    There Was No Realistic Opportunity for Defendants George and Genoves to Intervene in the Purported Use of Excessive Force. ................................................... 6

            1.    Defendants George and Genoves Did Not Have Reason to Know that Captain Willis Would Use Force. ........................... 7

            2.    The Two-Second Duration of the Spray Did Not Provide a Realistic Opportunity for Defendants to Intervene. ........................ 9

        B.    Defendants Had No Duty to Intervene Because The Force Used Was Objectively Reasonable. ............................................. 10

        C.    Defendants Had No Duty to Intervene Because Defendant Willis Was Not Deliberately Indifferent In Spraying Plaintiff. ................................................. 14

            3.    Plaintiff's Medical Condition was Not Sufficiently Serious ........................... 15

            4.    Defendant Willis Acted Reasonably by Spraying Plaintiff ............................. 16

    POINT II:    DEFENDANTS DID NOT DIRECTLY PARTICIPATE IN EXCESSIVE FORCE OR DELIBERATE INDIFFERENCE. ..................... 17

**Page**

POINT III:  DEFENDANTS WERE NOT DELIBERATELY INDIFFERENT (DELAY) TO PLAINTIFF'S MEDICAL NEEDS ................................................... 18

    A.  Plaintiff Cannot Pursue a Claim that was Not Alleged in the Complaint. ........................... 19

    B.  Any Delay in Treatment Was Not Sufficiently Serious.............................................. 19

    C.  Defendants Did Not Recklessly Fail to Act with Reasonable Care. ...................................... 21

POINT IV:  DEFENDANTS ARE, IN ANY EVENT, ENTITLED TO QUALIFIED IMMUNITY ........................................... 22

    A.  It is Not Clearly Established that the Spray Was Objectively Unreasonable Under Excessive Force or Deliberate Indifference.................................... 22

    B.  It is Not Clearly Established that an Eight Minute Wait in Decontamination or Three and a Half Hour Wait in Being Seen at the Clinic Constitutes Deliberate Indifference to Medical Needs. ................................................. 23

    C.  It Was Not Objectively Unreasonable for Defendants Not to Intervene............................. 24

CONCLUSION................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

Adamson v. Miller,
    808 F. App'x 14 (2d Cir. 2020) .............................................................10

Anderson v. Branen,
    17 F.3d 552 (2d Cir. 1994).....................................................................6

Baltas v. Rivera,
    No. 19-CV-1043 (MPS), 2019 U.S. Dist. LEXIS 141833
    (D.Conn. Aug. 21, 2019) ........................................................... 14, 21-22

Berman v. Williams,
    No. 17-CV-2757 (JGK), 2019 U.S. Dist. LEXIS 160086
    (S.D.N.Y. Sept. 17, 2019).....................................................................12

Blond v. City of Schenectady,
    No. 10-CV-598 (TJM), 2010 U.S. Dist. LEXIS 114267
    (N.D.N.Y. Oct. 26, 2010)................................................................20, 24

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)..............................................................................5

Cerbelli v. City of New York,
    No. 99-CV-6846 (RML), 2008 U.S. Dist. LEXIS 109341
    (E.D.N.Y. Sept. 8, 2008)...................................................................7, 9

Chamberlain v. City of White Plains,
    986 F. Supp. 2d 363 (S.D.N.Y. 2013)....................................................17

Chepilko v. City of New York,
    No. 06-CV-5491 (ARR) (LB), 2012 U.S. Dist. LEXIS 15110
    (E.D.N.Y. Feb. 6, 2012)......................................................................18

City of Escondido v. Emmons,
    139 S. Ct. 500 (2019).........................................................................22

Curley v. Vill. Of Suffern,
    268 F.3d 65 (2d Cir. 2001)..................................................................10

D.K v. Teams.,
    260 F. Supp. 3d 334 (S.D.N.Y. 2017)...............................................10, 11

Darnell v. Pineiro,
    849 F.3d 17 (2d Cir. 2017).............................................................10, 14

**Cases**                                                                                                           **Pages**

District of Columbia v. Wesby,
    138 S. Ct. 577 (2018)........................................................................................................22

Dollard v. City of New York,
    408 F. Supp. 3d 231 (E.D.N.Y. 2019) ..........................................................................16, 21

Eastman Kodak Co. v. Image Tech. Servs., Inc.,
    504 U.S. 451 (1992)...........................................................................................................5

Edrei v. Maguire,
    892 F.3d 525 (2d Cir. 2018)...............................................................................................10

Figueroa v. Mazza,
    825 F.3d 89 (2d Cir. 2016)................................................................................................6, 9

Frost v. Davis,
    No. 17-CV-8418, 2019 U.S. Dist. LEXIS 160096
    (S.D.N.Y. Sept. 18, 2019) ................................................................................11, 12, 13, 23

Goodwin v. Kennedy,
    No. 13-CV-1774 (SJF) (AKT), 2015 U.S. Dist. LEXIS 29282
    (E.D.N.Y. Feb. 6, 2015) ....................................................................................................15

Henry v. Dinelle,
    No. 10-CV-0456 (GTS) (DEP), 2011 U.S. Dist. LEXIS 136583
    (N.D.N.Y. Nov. 29, 2011) .............................................................................................7, 8, 9

Henry-Lee v. City of New York,
    746 F. Supp. 2d 546 (S.D.N.Y. 2010)...............................................................................6

Holland v. City of New York,
    197 F. Supp. 3d 529 (S.D.N.Y. 2016)...............................................................................25

Holmes v. City of New York,
    No. 17-CV-3874 (WHP), 2018 U.S. Dist. LEXIS 150257
    (S.D.N.Y. Sept. 4, 2018)....................................................................................................15

Holness v. Gagne,
    No. 18-CV-1752 (JAM), 2019 U.S. Dist. LEXIS 69357
    (D.Conn. Apr. 24, 2019) ....................................................................................................14

Ismael v. Charles,
    No. 18-CV-3957 (GHW), 2020 U.S. Dist. LEXIS 124292
    (S.D.N.Y. July 15, 2020) ...............................................................................................22, 23

<u>**Cases**</u>                                                                                    <u>**Pages**</u>

<u>Jaramillo v. Weyerhaeuser Co.</u>,
   536 F.3d 140 (2d Cir. 2008)........................................................................................5

<u>Johnson v. City of New York</u>,
   No. 15 Civ. 6915 (ER), 2019 U.S. Dist. LEXIS 10867
   (S.D.N.Y. Jan. 23, 2019).........................................................................................17

<u>Jones v. Sankey</u>,
   No. 18-CV-445 (WCG), 2018 U.S. Dist. LEXIS 207484
   (E.D.Wis. Dec. 10, 2018)........................................................................................16

<u>Kingsley v. Hendrickson</u>,
   135 S. Ct. 2466 (2015)............................................................................................10

<u>Liverpool v. Davis</u>,
   442 F. Supp. 3d 714 (S.D.N.Y. 2020).....................................................18, 21, 24

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>,
   475 U.S. 574 (1986).................................................................................................5

<u>Mullenix v. Luna</u>,
   136 S. Ct. 305 (2015)..............................................................................................22

<u>O'Neill v. Krzeminski</u>,
   839 F.2d 9 (2d Cir. 1988).......................................................................................6, 9

<u>Paschal-Barros v. Balatka</u>,
   No. 18-CV-2021 (VLB), 2020 U.S. Dist. LEXIS 159644
   (D.Conn. Sept. 1, 2020) .........................................................................................14

<u>Pena v. Deprisco</u>,
   432 F.3d 98 (2d Cir. 2005)......................................................................................22

<u>Pierce v. City of New York</u>,
   293 F. Supp. 3d 306 (E.D.N.Y. Dec. 11, 2017) .......................................................7

<u>Provost v. City of Newburgh</u>,
   262 F.3d 146 (2d Cir. 2001)....................................................................................17

<u>Quinones v. Rollison</u>,
   No. 18-CV-1170 (AJN), 2020 U.S. Dist. LEXIS 203975
   (S.D.N.Y. Nov. 1, 2020) .........................................................................................11

<u>Revels v. Corr. Med. Care, Inc.</u>,
   No. 17-CV-0088 (MAD) (TWD), 2018 U.S. Dist. LEXIS 51118
   (N.D.N.Y. Mar. 28, 2018)........................................................................................19

**Cases**                                                                      **Pages**

Sash v. United States,
    674 F. Supp. 2d 531 (S.D.N.Y. 2009)................................................................18

Scott v. Harris,
    550 U.S. 372 (2007)..................................................................................................6

Shah v. Helen Hayes Hosp.,
    252 Fed. App'x 364 (2d Cir. 2007)........................................................................19

Tracy v. Freshwater,
    623 F.3d 90 (2d Cir. 2010)......................................................................................11

Van Hoven v. City of New York,
    No. 16 Civ. 2080 (GBD) (DCF), 2018 U.S. Dist. LEXIS 158224
    (S.D.N.Y. Sept. 17, 2018).......................................................................................14

Vazquez v. Spear,
    No. 12-CV-6883 (VLB), 2014 U.S. Dist. LEXIS 113018
    (S.D.N.Y. Aug. 5, 2014) ..................................................................................12, 23

Victory v. Pataki,
    814 F.3d 47 (2d Cir. 2016).....................................................................................17

Walton v. Lee,
    No. 15-CV-38 (PGG) (RWL), 2019 U.S. Dist. LEXIS 28760
    (S.D.N.Y. Feb. 21, 2019) ...........................................................................18, 21, 24

Whittington v. Ponte,
    No. 16-CV-1152 (AJN), 2020 U.S. Dist. LEXIS 92743
    (S.D.N.Y. May 27, 2020).......................................................................................13

Young v. Cabrera,
    No. 18-CV-3028 (RPK) (ST), 2020 U.S. Dist. LEXIS 223780
    (E.D.N.Y. Nov. 30, 2020).......................................................................................17

**Statutes**

42 U.S.C. § 1983..............................................................................................14, 17

Fed. R. Civ. P. 15(a)(2)...........................................................................................19

**Statutes**                                                                                                    **Pages**

Fed. R. Civ. P. 56.............................................................................................................5

Fed. R. Civ. P. 56(c) .......................................................................................................6

Fed. R. Civ. P. 56.1.........................................................................................................2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ANTOINE ROSS,

                                      Plaintiff,

                -against-                    16 Civ. 6704 (PAE) (KNF)

CAPTAIN DION WILLIS, ET AL.,

                                    Defendants.

------------------------------------------------------------------------x

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

        Plaintiff alleges that Defendant New York City Department of Correction ("DOC") officers Sadoc Genoves and Rochaurd George failed to intervene when DOC Captain Dion Willis sprayed Plaintiff with pepper spray after Plaintiff had refused multiple orders to leave his cell to attend a scheduled court hearing and, thereafter, physically resisted attempts to escort him out of his cell. However, the undisputed evidence demonstrates that such claims fail as a matter of law. Defendants George and Genoves had no realistic opportunity to intervene because it was not apparent to them that Defendant Willis intended to spray Plaintiff until the moment the spray was deployed. Moreover, as Plaintiff physically resisted attempts to handcuff him in an effort to produce him to court, the underlying actions by Defendant Willis were reasonable as a matter of law and, therefore, preclude any claim of failure to intervene as against Defendants George and Genoves. Plaintiff also purports to bring claims of excessive force and deliberate indifference to inmate safety against Defendants George and Genoves arising out of the pepper-spraying under a direct participation theory. Yet, Plaintiff lacks any evidence showing such direct participation. Additionally, Plaintiff attempts to bring a claim against Defendants

George and Genoves for a delay in receiving medical care.  However, no such claim has been

pled in Plaintiff's operative complaint and, therefore, fails.  Even if such claim had been pled it

would be subject to dismissal, as Plaintiff has failed to adduce any evidence of an unreasonable

delay.  The clear evidence demonstrates that Plaintiff admitted he was relieved of the effects of

the spray.  Finally, at a minimum, the actions of Defendants George and Genoves were not

objectively unreasonable nor were they clearly established to be unconstitutional.  Defendants

George and Genoves, therefore, are shielded by qualified immunity.

### STATEMENT OF FACTS

On the morning of June 14, 2016, Plaintiff was incarcerated as a pretrial detainee,

in Otis Bantum Correctional Center ("OBCC") facing charges of robbery in the first degree.

Joint Statement of Material Facts ("JSF") at ¶ 3; Defendants George and Genoves Statement of

Material Facts Pursuant to SDNY Local Civil Rule 56.1 ("56.1"), at ¶ 2. Because Plaintiff was

classified as a maximum security detainee, he was housed in the 1 West Housing area, which

was designated as Enhanced Supervision Housing.  JSF, at ¶¶ 4-5.  That morning, Plaintiff had a

scheduled Court appearance.  56.1, at ¶ 3. When an inmate in OBCC has a scheduled court date,

OBCC staff typically wake up the inmate at approximately 4 a.m.  JSF, ¶ 21.  Inmates are

awoken at 4 a.m. so they are properly afforded the ability to shower, eat breakfast, and dress,

because court production begins around 6 a.m.  Id.

Plaintiff's Initial Refusals to go to Court

On the date of the incident, while supervising court production, non-party DOC

Captain Latonia Monroe was informed by a correction officer that Plaintiff refused to go to

court.  JSF, at ¶ 23. As such, Captain Monroe went to Plaintiff's cell.  JSF, at ¶ 24. When

Captain Monroe arrived at Plaintiff's cell she saw that Plaintiff was lying on his bed.  JSF, at ¶

25.  Further, Plaintiff told Captain Monroe that he didn't want to go to court but did not provide

any explanation as to why he was refusing to go to court.  JSF, at ¶ 26; 56.1, at ¶ 5.  Captain Monroe left Plaintiff's cell and continued with her duties, but she returned to his cell and made additional attempts to produce Plaintiff to court.  JSF, at ¶ 27.  Each time, Plaintiff refused but did not provide Monroe with any additional information regarding why he was refusing to go to court. 56.1, at ¶ 5.  Plaintiff, however, knew that he could not unilaterally refuse to go to court. 56.1, at ¶ 6.  Plaintiff also knew that whenever he had a scheduled court date, it was pursuant to a court order requiring him to appear.  56.1, at ¶ 7.

A Probe Team is Sent to Produce Plaintiff to Court

After Plaintiff's multiple refusals, a probe team was ordered to Plaintiff's cell. JSF, at ¶ 29. The probe team consisted of four correction officers and one captain, including defendants Willis, George, Genoves, and non-party officers Jordan and Philips. JSF, at ¶¶ 30-31. Defendant Willis was equipped with MK-9 chemical agent. JSF, at ¶ 33. Defendant Willis entered the cell first, followed by Defendant George, then Defendant Genoves. JSF, at ¶ 34. Plaintiff was still lying on his bed.  JSF, at ¶ 35.

Plaintiff Refuses to Comply with the Probe Teams' Orders

Defendant Willis told Plaintiff that he had to get up and go to court several times and Defendant George told Plaintiff to "come on" so he could be placed in handcuffs. JSF, at ¶¶ 37-38. However, Plaintiff told the probe team not to touch him and that he was "going to sleep." JSF, at ¶ 39.  Defendant Genoves perceived Plaintiff's refusals to comply as "somewhat of a threat" because he did not know Plaintiff's intentions. 56.1, at ¶ 8.

Plaintiff Continues to Refuse to Comply and Physically Resists

One of the Defendants attempted to grab Plaintiff's arm to handcuff him and take him out of his cell.  JSF, at ¶ 40.  Plaintiff refused to be handcuffed and, instead, pulled his arm away. 56.1, at ¶ 9.  Additionally, Plaintiff stated "don't touch me, bro; do not touch me, bro; bro,

3

do not touch me, son; grabbing me . . . grabbing' my arms while I'm on drugs, boy; what's wrong with you boy; is you crazy;" and "what's wrong with you son." JSF, at ¶ 40.

<u>Defendant Willis Gives Plaintiff a Final Warning</u>

Defendant Willis stated "I'm gonna tell you now, I need to take you out or I'm gonna spray you[,] I'm gonna give you one opportunity." JSF, at ¶ 41. Defendant Willis gave Plaintiff an opportunity to comply with his orders.  56.1, at ¶ 11. After the warning, Defendant George had reason to believe that Defendant Willis might not spray Plaintiff even if Plaintiff did not comply.  56.1, at ¶ 10. Defendant Willis's warning annoyed Plaintiff, 56.1, at ¶ 12, and he stated "spray me for what" and "y'all niggas is crazy son, y'all niggas is crazy,"  JSF, at ¶ 43. Defendant Willis then deployed one, short, two-second burst of chemical agent, JSF, at ¶ 44; 56.1, at ¶ 13, nine seconds after Defendant Willis issued the warning.  JSF, at ¶ 41, 44.  Plaintiff was thereafter handcuffed by Defendant George. JSF, at ¶ 45. While Plaintiff was being handcuffed, he stated, for the first time, that he was asthmatic.  JSF, at ¶ 46; 56.1, at ¶ 17.

<u>Plaintiff is Escorted to the Decontamination Shower</u>

According to Plaintiff, he began feeling the effects of the chemical agent, including coughing, burning eyes, choking, dizziness, chest tightness, wheezing, and shortness of breath. 56.1, at ¶ 15.  Plaintiff was escorted out of his cell and to the intake area by the probe team. JSF, at ¶ 47.  Removing Plaintiff from his cell was part of the decontamination process. 56.1, at ¶ 18.  The probe team lifted Plaintiff and placed him on a gurney and wheeled him from outside the cell area to the intake area, where the shower was located.  JSF, at ¶ 49-51.  Plaintiff was placed in the shower and the flex cuffs were cut.  JSF, at ¶ 54-55.

<u>Plaintiff Suffers No Injury from Being Sprayed with MK-9</u>

Plaintiff washed the chemical agent off of his body in the decontamination shower. JSF, at ¶ 56.  Indeed, Plaintiff chose to stop showering by informing a DOC staff

member that he was "relieved." 56.1, at ¶ 20.   After the decontamination shower, a fellow officer, not the probe team, escorted Plaintiff to the medical clinic. 56.1, at ¶ 21-22. There, Plaintiff was seen by DOC's physician's assistant Larry Blackmore.  JSF, at ¶ 57.

The medical records from the date of the incident state that Plaintiff "presented to [the] clinic in no distress," "no injury was noted," and "no treatment was indicated."  JSF, at ¶ 58-59.  No medical professional has told Plaintiff that the June 14, 2016, incident made his asthma more severe. 56.1, at ¶ 23.  Additionally, a medical record about an asthma follow up appointment from August 11, 2016, states that Plaintiff's asthma was "well controlled." 56.1, at ¶ 24.  Finally, on November 10, 2016, at Plaintiff's three month follow up appointment, the medical record states that Plaintiff's asthma was "well controlled."  56.1, at ¶ 25.

## STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-movant, no genuine issue of material fact exists. See Fed. R. Civ. P. 56; Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 456 (1992). The non-movant must "make a showing sufficient to establish the existence of an element essential to that party's case . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "[T]he non-moving party must come forward with admissible evidence sufficient to raise a genuine issue of material fact for trial." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008) (citations omitted). The non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Nor may the non-moving party "rest upon the mere allegations or denials of his pleading."  Celotex, 477 U.S. at 322 n.3.  Rather, the non-moving party must "cit[e] to particular parts of the materials in the record" to show that a

fact is generally disputed. Fed. R. Civ. P. 56(c).  While the evidence must be viewed in the light most favorable to the non-moving party, when there is reliable objective evidence, the evidence may speak for itself.  See Scott v. Harris, 550 U.S. 372, 378-81 (2007).

## ARGUMENT

### POINT I:  DEFENDANTS ARE NOT LIABLE FOR FAILURE TO INTERVENE.

"A [corrections] officer 'has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers.'"  Henry-Lee v. City of New York, 746 F. Supp. 2d 546, 565 (S.D.N.Y. 2010) (quoting O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988)).  "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know that excessive force is being used[.]"  Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)).  "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring."  Id.

### A.   There Was No Realistic Opportunity for Defendants George and Genoves to Intervene in the Purported Use of Excessive Force.

To determine whether a Defendant has a realistic opportunity to intervene, courts look to whether the constitutional violation was "of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator."  See Henry-Lee, 746 F. Supp. 2d at 565.  Although a court should not create hard-and-fast cutoffs, the "duration [of the force] will always be relevant and will frequently assume great importance."  Figueroa v. Mazza, 825 F.3d 89, 107 (2d Cir. 2016).

1.    *Defendants George and Genoves Did Not Have Reason to Know that Defendant Willis Would Use Force.*

Whether Defendants have a realistic opportunity to intervene is predicated on when they had reason to know that force would be used. Even a warning that precedes a use of force is still too uncertain to give a defendant "reason to know" that force would be used at all. See Henry v. Dinelle, No. 10-CV-0456 (GTS) (DEP), 2011 U.S. Dist. LEXIS 136583, at *31-*32 (N.D.N.Y. Nov. 29, 2011).

Here, as an initial matter, Defendants George and Genoves had no reason to know that force would be used while Defendants Willis and George told Plaintiff that he had to get up and go to court.  When the probe team entered Plaintiff's cell, Defendants Willis and George repeatedly told Plaintiff that he had to go to court. JSF, ¶ 37.  Additionally, Defendant George told Plaintiff to "come on" so that he could place handcuffs on Plaintiff.  JSF, ¶ 38.  Defendants Genoves and George undoubtedly had no duty to intervene at this stage as this conduct was lawful and there was no indication that Defendant Willis would spray Plaintiff.  See, e.g., Pierce v. City of New York, 293 F. Supp. 3d 306, 314 (E.D.N.Y. Dec. 11, 2017) (explaining that there was no need to intervene during the lawful action that preceded the force at issue); Cerbelli v. City of New York, No. 99-CV-6846 (RML), 2008 U.S. Dist. LEXIS 109341, at *40 (E.D.N.Y. Sept. 8, 2008) (concluding that before the force at issue was used, two witnessing officers "had no duty to intervene [or reason to know that excessive force would be used] because no constitutional violation had occurred").

Defendants also did not have reason to know that force would be used when Defendant Willis warned Plaintiff that he would spray him.  It cannot be disputed that there was a court order requiring Plaintiff's appearance for a hearing, that Plaintiff was aware that he could not unilaterally choose not to go to court pursuant to that order, and that Plaintiff had refused

7

multiple orders by the probe team to comply with handcuffing and/or their efforts to produce Plaintiff for court, prompting defendant Willis to state "I need to take you out or I'm gonna spray you[;] I'm gonna give you one more opportunity." JSF, ¶ 41. Several possibilities, however, were raised by Defendant Willis's warning: (1) if Plaintiff complied, he would not be sprayed; (2) if Plaintiff did not comply, he would be sprayed; and, most importantly, (3) if Plaintiff did not comply, Defendant Willis could still choose to not spray Plaintiff.  Here, defendants could not have known that (a) Plaintiff would not comply and (b) that Defendant Willis would actually follow through with spraying Plaintiff.  Indeed, Defendant George confirmed that he did not know if Defendant Willis would use the spray after giving the warning, even if Plaintiff did not comply, since the warning could have been a ploy to encourage Plaintiff to comply with the probe team's efforts to produce him for court.  56.1, at ¶ 10.  Because of the uncertainty of the situation, Defendants George and Genoves did not have reason to know that force would be used and, therefore, had no duty to intervene prior to the time that Defendant Willis deployed the spray.  See Henry, 2011 U.S. Dist. LEXIS 136583, at *31-*32 (finding that "the use of force was simply too uncertain for a reasonable person in [the failure to intervene defendant's] position to expect" even though a warning preceded the use of force).

Henry v. Dinelle, is illustrative here.  In Henry, plaintiff alleged that he was in a room with three defendant-officers and their superior.  See 2011 U.S. Dist. LEXIS 136583, at *3-*4.  While in the room, one of the officers gave plaintiff an order and threatened to use physical force if he did not comply.  See id. at *31.  Plaintiff admitted that he did not comply with the order and, rather soon after the command and threat of force were issued, one of the officers punched him in the face.  See id.  Plaintiff alleged that the superior who was in the room failed to intervene.  See id. at *30.  To the contrary, the court held that "the use of force was

simply too uncertain for a reasonable person in [the superior's] position to expect [it]," even though, prior to the use of force, another defendant issued a warning that force would be used if Plaintiff did not comply with his orders.  See id. at *31-*32.  Similarly, here, Defendant Willis's warning to Plaintiff that force (i.e., pepper spray) would be used if he failed to comply with orders was simply "too uncertain" for Defendants George and Genoves to expect Plaintiff to actually be sprayed.

> ### 2.   *The Two-Second Duration of the Spray Did Not Provide a Realistic Opportunity for Defendants to Intervene.*

It is undisputed that Defendant Willis deployed one, short, two-second burst of chemical agent.  JSF, ¶ 44; 56.1, at ¶ 13.  One, short, two-second burst of chemical agent is undeniably not of a "sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator."  See O'Neill, 839 F.2d at 11-12 (reasoning that three rapid, successive strikes were too quick to afford witnessing officers a realistic opportunity to prevent the harm); Henry, 2011 U.S. Dist. LEXIS 136583, at *30-*32 (concluding that the use of force was "too brief in nature to give [d]efendant . . . a realistic opportunity to intervene in it" even though, prior to the use of force, another defendant issued a warning that force would be used if Plaintiff did not comply with his orders); Cerbelli, 2008 U.S. Dist. LEXIS 109341, at *40 (holding that officers could not reasonably have intervened given the "exceedingly compressed time frame" in which the other officer used force).[1]

---

[1] To be sure, Defendants do not request that the court set a hard-and-fast temporal cutoff; in other words, that any assault lasting less than three seconds does not give a defendant a realistic opportunity to intervene. That would be undoubtedly impermissible.  See Figueroa v. Mazza, 825 F.3d 89, 107 (2d Cir. 2016) (rejecting the lower court's bright-line rule in analyzing the realistic opportunity prong).  Defendants simply contend, and the undisputed facts show, that the two seconds of force here is too quick for defendants to have a realistic opportunity to intervene, which is the same analysis that the Figueroa court made after rejecting the hard-and-fast cutoff.  See id. at 108 ("[W]e cannot hold that the assault occurred so quickly that the defendant officers lacked time to intercede as a matter of law.").

Because the length of the spray was two seconds, it was not of sufficient duration to provide Defendants a realistic opportunity to intervene. Accordingly, Defendants should be granted summary judgment on Plaintiff's failure to intervene claims.

**B.    Defendants Had No Duty to Intervene Because The Force Used Was Objectively Reasonable.**

More basically, it must be noted that Defendant Willis's deployment of the chemical agent was objectively reasonable and, accordingly, there would have been no duty to intervene.  "Failure to intercede results in liability where an officer observes excessive force is being used or has reason to know that it will be." Curley v. Vill. Of Suffern, 268 F.3d 65, 72 (2d Cir. 2001).   The Fourteenth Amendment requires that Plaintiff show the defendant's force purposely or knowingly used against him was objectively unreasonable.[2]  See Adamson v. Miller, 808 F. App'x 14, 16 (2d Cir. 2020). Conversely, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.'" D.K v. Teams., 260 F. Supp. 3d 334, 355 (S.D.N.Y. 2017) (quoting Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472 (2015)) (omitting second internal quotation marks). Objective reasonableness "must be [determined] from the perspective of a reasonable official under the circumstances, and a court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of officials are needed to preserve internal order and discipline and to maintain institutional security." D.K., 260 F. Supp. 3d at 355 (internal quotation marks omitted). In other words, the court determines "whether the governmental action was rationally related to a legitimate government objective." Edrei v. Maguire, 892 F.3d 525, 536 (2d Cir. 2018). Additionally, courts must consider the following factors: "the relationship between the need for

---

[2] Plaintiff was a pretrial detainee at the time of the incident, JSF, at ¶ 3—therefore, his excessive force claim is under the Fourteenth Amendment.  Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).

the use of force and the amount of force used; the extent of the Plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the Plaintiff was actively resisting." D.K., 260 F. Supp. 3d at 356.

The use of pepper spray "constitutes a significant degree of force." Tracy v. Freshwater, 623 F.3d 90, 98 (2d Cir. 2010). However, "the use of a single burst of a chemical agent, which is not a dangerous quantity, is a constitutionally acceptable means of controlling an unruly or disruptive inmate." Frost v. Davis, No. 17-CV-8418, 2019 U.S. Dist. LEXIS 160096, at *20 (S.D.N.Y. Sept. 18, 2019) (internal quotation marks omitted). In fact, if the force was "applied in a good-faith effort to maintain or restore discipline, it is unlikely to be repugnant to the conscience of mankind, and will not amount to excessive force under Second Circuit law." Quinones v. Rollison, No. 18-CV-1170 (AJN), 2020 U.S. Dist. LEXIS 203975, at *10 (S.D.N.Y. Nov. 1, 2020) (internal quotation marks omitted).

Defendant Willis used objectively reasonable force. Here, the need to use force was high as Plaintiff, a maximum security inmate, repeatedly refused verbal orders to attend court and then escalated his resistance by pulling his arm away from an officer who was trying to handcuff him. JSF, at ¶¶ 39-40; 56.1, at ¶ 1, 9. Specifically, at the point that the probe team was ordered to his cell, Plaintiff had already repeatedly refused orders to attend his scheduled court appearance.[3] JSF, at ¶¶ 23-28. During his interaction with the probe team, Plaintiff again refused repeated orders to attend court. JSF, at ¶¶ 35, 37-38, 43. Finally, and most importantly,

---

[3] Plaintiff's refusal to comply with orders includes the following: (1) Plaintiff was presumably approached by a DOC employee at 4 a.m., JSF, at ¶ 21; (2) between 4 a.m. and 6:40 a.m., Plaintiff was approached again by a DOC employee to get ready for court or even be produced to court, see id. at ¶¶ 21, 23; and (3) Plaintiff was later approached by non-party Captain Latonia Monroe at least two more times about his refusal and, each time, Plaintiff voiced his refusal to go to court, see id. at ¶¶ 24, 27.

Plaintiff physically resisted the probe team's attempts to produce him to Court by pulling his arm away when a member of the probe team attempted to place him in handcuffs, JSF, at ¶ 40; 56.1, at ¶ 9. See Berman v. Williams, No. 17-CV-2757 (JGK), 2019 U.S. Dist. LEXIS 160086, at *16-*17 (S.D.N.Y. Sept. 17, 2019) (holding that the force used was objectively reasonable because Plaintiff presented security risks by refusing to comply with legitimate commands and physically resisting).  Indeed, use of pepper spray on an inmate like Plaintiff who is physically resisting an officer's attempts to handcuff him, is considered a lesser degree of force that should be used before physical contact.  56.1, at ¶ 14.  Presumably, continued attempts to handcuff a resisting inmate risks escalating a physical conflict, which would pose safety risks to both the officers and the inmate.

   In view of Plaintiff's physical and verbal resistance, Defendant Willis' deployment of one, short, two-second burst of chemical agent, JSF, at ¶ 44; 56.1, at ¶ 13, constituted a reasonable use of force.  See, e.g., Frost v. Davis, 2019 U.S. Dist. LEXIS 160096, at *19-*20 (concluding that the defendants' single burst of chemical agent was objectively reasonable under the Fourteenth Amendment because Plaintiff ignored and refused to comply with the defendants' orders); Vazquez v. Spear, No. 12-CV-6883 (VLB), 2014 U.S. Dist. LEXIS 113018, at *10-*11 (S.D.N.Y. Aug. 5, 2014) (dismissing a Fourteenth Amendment excessive force claim where the defendant officer used chemical agent after Plaintiff "refused to comply with orders to be handcuffed").

   Plaintiff's injuries were temporary and expected.  Plaintiff testified that, after he was sprayed, he coughed, choked, wheezed, felt dizzy, felt shortness of breath, and felt his eyes burning. 56.1, at ¶ 15.  The effects Plaintiff experienced are the expected, short-lasting effects of

MK-9.[4]  See Whittington v. Ponte, No. 16-CV-1152 (AJN), 2020 U.S. Dist. LEXIS 92743, at *37-*38 (S.D.N.Y. May 27, 2020) (holding that Plaintiff's excessive force claim fails because his "short-lasting injuries arising from this incident, therefore, are the natural consequence of the use of pepper spray"). Plaintiff was able to wash the chemical agent off of his body, JSF, at ¶ 56, and he told a DOC staff member that he was "relieved," 56.1, at ¶ 20—reinforcing that the effects of the chemical agent were temporary as Plaintiff was "relieved" by the end of his shower.  Indeed, when Plaintiff was seen at the medical clinic later that day, he presented in "no distress," and "no treatment was indicated" because "no injury was noted."  JSF, at ¶¶ 58-59. Furthermore, no medical professional has told Plaintiff that the incident made his asthma more severe, 56.1, at ¶ 23, and medical professionals considered Plaintiff's asthma condition as well-controlled in two asthma-specific medical visits after the incident, 56.1, at ¶¶ 24-25.  That any injuries to Plaintiff were the short-lasting, expected results of being pepper sprayed demonstrates the objective reasonableness of the force used by Defendant Willis.

Lastly, Defendant Willis attempted to temper any use of force.  He repeatedly asked Plaintiff to voluntarily attend court before resorting to use of chemical spray.  JSF, at ¶¶ 37, 41.  Further, even before the spray was used, the probe team attempted to use a minimal amount of force by grabbing Plaintiff's arm to place handcuffs on him and take him out of his cell. JSF, at ¶ 40.  However, this attempt was to no avail as Plaintiff pulled his arm away and repeatedly told the officers not to touch him. JSF, at ¶ 40; 56.1, at ¶ 9. The amount force used by Defendant Willis was reasonable under the circumstances, as it was limited to "the use of a single burst of a chemical agent, which is not a dangerous quantity. . . ."  Frost, 2019 U.S. Dist. LEXIS 160096, at *20.

---

[4] The anticipated effects of Oleoresin Capsicum ("OC") chemical agent are (1) swelling of the mucous membranes; (2) immediate involuntary closing of the eyes; (3) uncontrollable coughing; (4) gagging; (5) gasping for breath; and (6) sensation of intense burning of the skin and the mucous membranes inside the nose and the mouth.  56.1, at ¶ 16.

Because Defendant Willis did not use excessive force in spraying Plaintiff, it follows that Defendants George and Genoves could not have failed to intervene. Therefore, Plaintiff's failure to intervene claim premised on the use of excessive force must fail.

**C.  Defendants Had No Duty to Intervene Because Defendant Willis Was Not Deliberately Indifferent In Spraying Plaintiff.**

A claim for deliberate indifference has two prongs. First, "[t]he 'objective prong' requires a 'showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process.'"  Van Hoven v. City of New York, No. 16 Civ. 2080 (GBD) (DCF), 2018 U.S. Dist. LEXIS 158224, at *3 (S.D.N.Y. Sept. 17, 2018) (quoting Darnell, 849 F.3d at 29).  A condition at issue is "sufficiently serious" if it is "an urgent medical condition that is capable of causing death, degeneration, or extreme or chronic pain." Holness v. Gagne, No. 18-CV-1752 (JAM), 2019 U.S. Dist. LEXIS 69357, at *14 (D.Conn. Apr. 24, 2019).  Second, under the subjective prong, Plaintiff must show that the Defendant "'recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant knew, or should have known, that the condition posed an excessive risk to health or safety.'"  Van Hoven, 2018 U.S. Dist. LEXIS 158224, at *4 (quoting Darnell, 849 F.3d at 35). "Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983." Baltas v. Rivera, No. 19-CV-1043 (MPS), 2019 U.S. Dist. LEXIS 141833, at *23 (D.Conn. Aug. 21, 2019). "Nor does a difference of opinion regarding what constitutes an appropriate response and treatment constitute deliberate indifference."  Id.

"Courts within the Second Circuit have held that the fact that an inmate is asthmatic does not, by definition, constitute a serious medical need." Paschal-Barros v. Balatka, No. 18-CV-2021 (VLB), 2020 U.S. Dist. LEXIS 159644, at *12 (D.Conn. Sept. 1, 2020)

(collecting cases). Additionally, "the residual effects of a chemical agent generally do not constitute a serious medical need." Id. at *13.

### 3. *Plaintiff's Medical Condition was Not Sufficiently Serious*

Defendant Willis was not deliberately indifferent to Plaintiff's medical needs because the condition at issue was not sufficiently serious and he did not recklessly fail to act with reasonable care. Here, under the first prong, Plaintiff testified that he experienced coughing, burning eyes, choking, dizziness, chest tightness, wheezing, and shortness of breath after being sprayed. 56.1, at ¶ 15. However, these are the anticipated effects of MK-9 noted in the Chemical Agents Directive 4510R-G.[5] 56.1, at ¶ 16. Merely suffering from the expected effects of the chemical agent does not constitute a sufficiently serious medical need. See Holmes v. City of New York, No. 17-CV-3874 (WHP), 2018 U.S. Dist. LEXIS 150257, at *18-*19 (S.D.N.Y. Sept. 4, 2018) (concluding that Plaintiff being "afflicted by a 20-60 minute coughing fit and burning sensations on his skin and eyes" is not a serious medical need because it is the temporary effects of chemical spray).

Further, the effects of the chemical agent were temporary, as Plaintiff chose to stop showering by informing a DOC employee that he was "relieved," 56.1, at ¶ 20, and, at the clinic, "no injury was noted," JSF, at ¶ 58. The absence of any indication in Plaintiff's medical records that he suffered an asthma attack or that he suffered a lasting injury shows that he has not established a sufficiently serious medical need. See Goodwin v. Kennedy, No. 13-CV-1774 (SJF) (AKT), 2015 U.S. Dist. LEXIS 29282, at *32-*33 (E.D.N.Y. Feb. 6, 2015) (reasoning that Plaintiff did not have a sufficiently serious medical need because his medical records "do not reflect that he was diagnosed with or treated for" a severe or life-threatening condition). In fact, no medical professional has told Plaintiff that the incident made his asthma more severe and, in

---

[5] See *supra* note 4.

two asthma-related follow up appointments, Plaintiff's medical records noted that his asthma was "well-controlled." 56.1, at ¶¶ 23-25.

4.    *Defendant Willis Acted Reasonably by Spraying Plaintiff*

Under the second prong, the probe team arrived at Plaintiff's cell with no knowledge of Plaintiff's asthma condition or contraindication with chemical agents, JSF, at ¶ 36, and only learned of his condition after the spray was deployed, JSF, at ¶¶ 44, 46; 56.1, at ¶ 17. To the extent that Plaintiff may argue that Defendant Willis should have determined that Plaintiff had contraindications for chemical agents before spraying him, the situation materially changed when Plaintiff physically resisted by pulling his arm away when one of the probe team members attempted to place him in handcuffs. JSF, at ¶ 40; 56.1, at ¶ 9.  At that point, it was reasonable for Defendant Willis to spray Plaintiff due to the inherent threat a resisting inmate poses to a correction officer.  Cf. Jones v. Sankey, No. 18-CV-445 (WCG), 2018 U.S. Dist. LEXIS 207484, at *11-*12 (E.D.Wis. Dec. 10, 2018) (holding that, in an Eighth Amendment case, the defendant was not deliberately indifferent to Plaintiff's asthma contraindication to OC spray because he used the OC spray to prevent the threat that Plaintiff posed to himself).  Further, the reasonableness of Defendant Willis's actions is further underscored by him escorting Plaintiff to the decontamination shower within eight minutes of deploying the spray.  See Dollard v. City of New York, 408 F. Supp. 3d 231, 237-38 (E.D.N.Y. 2019) (holding that defendants' actions did not recklessly fail to act with reasonable care to mitigate the risk because, after plaintiff lost her balance and told them that she could not breathe, the defendants promptly called an ambulance and sat plaintiff down).

Because Defendant Willis was not deliberately indifferent to Plaintiff by spraying him, it follows that Defendants George and Genoves had no "reason to know" of any such

16

constitutional violation. Therefore, Plaintiff's failure to intervene claim premised on deliberate indifference must fail.

**POINT II:  DEFENDANTS DID NOT DIRECTLY PARTICIPATE IN EXCESSIVE FORCE OR DELIBERATE INDIFFERENCE.**

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Victory v. Pataki, 814 F.3d 47, 67 (2d Cir. 2016) (internal quotation marks omitted). "Personal involvement may be shown by direct participation." Id. "Alternatively, personal involvement may be shown under a 'failure to intervene' theory." See Johnson v. City of New York, No. 15 Civ. 6915 (ER), 2019 U.S. Dist. LEXIS 10867, at *23 (S.D.N.Y. Jan. 23, 2019). The Second Circuit has defined direct participation as "requir[ing] intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001). Being present at the scene when the alleged unconstitutional conduct occurs, without more, does not establish direct participation. See, e.g., Young v. Cabrera, No. 18-CV-3028 (RPK) (ST), 2020 U.S. Dist. LEXIS 223780, at *23-*25 (E.D.N.Y. Nov. 30, 2020) (distinguishing between the three defendants (DiPresso, Johnston, Cabrera) who the court concluded directly participated and another defendant (Casey) who was present but was only determined to be liable under a failure to intervene claim).

Here, Defendants Genoves and George did not spray Plaintiff. JSF, at ¶ 44. As subordinates on the probe team, they also did not order defendant Willis to spray Plaintiff. Nor is there any evidence in the record that Defendants Genoves and George asked or encouraged Defendant Willis to use spray on Plaintiff. As such, any claim against Defendants George and Genoves for directly violating Plaintiff's rights must be dismissed as their mere presence at the scene does not give rise to liability under a direct participation theory. See Chamberlain v. City

of White Plains, 986 F. Supp. 2d 363, 386 (S.D.N.Y. 2013) (finding that Plaintiff failed to state a claim under section 1983 for lack of personal involvement or direct participation because, among other things, the lieutenant defendant did not "issue[] any orders to the officers who were present); Chepilko v. City of New York, No. 06-CV-5491 (ARR) (LB), 2012 U.S. Dist. LEXIS 15110, at *24-*25 (E.D.N.Y. Feb. 6, 2012) (concluding that Plaintiff's direct participation claim against two officers should be dismissed because, "[a]t most, [the two officers at issue] were at the scene at the time of Plaintiff's initial restraint"); Sash v. United States, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009) (holding that defendant was entitled to summary judgment on the direct participation claim because, even though he was present for the conduct at issue, he neither laid a hand on Plaintiff nor ordered another defendant to use force).[6]

## POINT III:  DEFENDANTS WERE NOT DELIBERATELY INDIFFERENT (DELAY) TO PLAINTIFF'S MEDICAL NEEDS

A claim for deliberate indifference to medical needs based on delay of treatment under the Fourteenth Amendment has two prongs, one objective and the other subjective.  Under the objective prong, "[t]o demonstrate that a delay in treatment rises to the level of constitutional significance, [Plaintiff] must show that the delay occasioned by Defendant's treatment has caused death, degeneration, or extreme pain." Walton v. Lee, No. 15-CV-38 (PGG) (RWL), 2019 U.S. Dist. LEXIS 28760, at *45-*46 (S.D.N.Y. Feb. 21, 2019).  "[D]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay." Liverpool v. Davis, 442 F. Supp. 3d 714, 737 (S.D.N.Y. 2020) (internal quotation marks omitted). Under the subjective prong, "[a] pretrial detainee suing for deliberate indifference

---

[6] Even if the Court finds that Defendants George and Genoves did directly participate in the excessive force and deliberate indifference claims, Defendants George and Genoves should be granted summary judgment, as shown above. See supra, point I.B.-I.C.

under the Fourteenth Amendment is required to show . . . that the prison official acted with objective recklessness, or that the defendant knew or should have known that an excessive risk to health or safety would result." <u>Revels v. Corr. Med. Care, Inc.</u>, No. 17-CV-0088 (MAD) (TWD), 2018 U.S. Dist. LEXIS 51118, at *13 (N.D.N.Y. Mar. 28, 2018).

**A.      Plaintiff Cannot Pursue a Claim that was Not Alleged in the Complaint.**

Plaintiff's Fifth Amended Complaint cannot be read, even liberally, to state a claim for deliberate indifference to medical needs based on a delay in treatment.  There are simply no facts pled in the operative complaint that would support such a theory. Weiner Decl., Ex. F at ¶ 7; JSF, at ¶ 1. Despite litigating this case under the operative complaint for twenty months, it was only on December 10, 2020 that Plaintiff informed Defendants that he intended to pursue this claim. That Plaintiff never pressed this claim is underscored by the fact that, at the pre-motion conference on November 23, 2020, Plaintiff confirmed for the Court that the only claims he was pursuing against Defendants George and Genoves were claims for "excessive force and deliberate indifference under a participant liability theory, and then failure to intervene to prevent Captain Willis's excessive force and deliberate indifference." Weiner Decl., Ex. I at ¶ 10. Plaintiff did not reveal any intent to proceed on a deliberate indifference to medical needs claim based on a delay in treatment. Regardless, Plaintiff's attempt to amend his complaint verbally to Defendants and/or in his opposition on this motion should be summarily denied. <u>See</u> <u>Shah v. Helen Hayes Hosp.</u>, 252 Fed. App'x 364, 366 (2d Cir. 2007) (summary order) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint."); <u>see also</u> Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave."). Nevertheless, even if Plaintiff is allowed to proceed on this heretofore never asserted claim, the claim fails for the reasons below.

**B.      Any Delay in Treatment Was Not Sufficiently Serious.**

To the extent Plaintiff alleges that there was a delay in getting him to the decontamination shower and that such purported delay was sufficiently serious, he fails. Here, after the chemical agent was used, the first steps the probe team took was to remove Plaintiff from the cell area and get him to a decontamination shower, both of which are essential steps in dealing with an inmate sprayed with chemical agent.   JSF, at ¶¶ 47, 54; 56.1, at ¶ 18. Approximately eight minutes passed between when Plaintiff was sprayed and when the flex cuffs were cut off so he could shower. JSF, at ¶¶ 44, 55.  Preliminarily, defendants note that the eight minute time period between the spraying and decontamination shower does not constitute a delay as there were immediate steps taken to remove Plaintiff from his cell where he was sprayed and to get him to the decontamination shower.  Further, even if that eight-minute timeframe could be considered a delay, the delay in treatment was not sufficiently serious, particularly because there is no evidence that the purported delay had any impact on Plaintiff's health.  See Walton, 2019 U.S. Dist. LEXIS 28760, at *45-*46 (dismissing a claim for delay in treatment because no evidence indicated that "the temporary delay in Walton's treatment had any impact whatsoever on his recovery or his health, let alone of a degenerative or extreme magnitude"); Blond v. City of Schenectady, No. 10-CV-598 (TJM), 2010 U.S. Dist. LEXIS 114267, at *13 (N.D.N.Y. Oct. 26, 2010) (holding that a thirty to sixty minute delay in the ability to rinse his eyes after being sprayed with pepper spray did not constitute a serious medical need because Plaintiff failed to allege what harm resulted in the delay).

To the extent Plaintiff alleges a delay in receiving medical services at the clinic, this also fails.  As an initial matter, the probe team members left Plaintiff in the custody of fellow correction officers after he was placed in the shower, as it was not the probe team's responsibility to deliver him to the clinic. 56.1, at ¶ 21-22. As such, any harm from the delay

(which there was not) is not attributable to defendants. Regardless, even if the merits question is reached, Plaintiff has no evidence that that he was harmed.[7]   In Plaintiff's own words, he was "relieved" after his decontamination shower and, notably, he did not request medical attention during his interaction with Defendants, 56.1, at ¶ 19.   See Liverpool, 442 F. Supp. 3d at 737 (granting defendant's motion for summary judgment on the delay of medical needs claim because he had no evidence that his condition worsened after he was exposed to OC spray and human waste and had to wait three hours to receive medical attention). Once Plaintiff was seen at the clinic he was in "no distress" and "no injury was noted." JSF, at ¶ 58. Further, in Plaintiff's two asthma-related follow up appointments, his medical records state that his asthma was "well-controlled." 56.1, at ¶¶ 24-25. Finally, "no medical professional has told Plaintiff that the June 14, 2016, incident made his asthma more severe." 56.1, at ¶ 23. Because any alleged delay in treatment did not exacerbate or worsen Plaintiff's condition, Plaintiff fails to establish that any delay in medical treatment was sufficiently serious.

**C.      Defendants Did Not Recklessly Fail to Act with Reasonable Care.**

Under the subjective prong, there is no evidence that Defendants acted recklessly. The video of the incident clearly shows that Defendants acted swiftly to ensure that Plaintiff was taken to a decontamination shower within eight minutes of being sprayed,  JSF, at ¶¶ 47, 55-56. See Dollard, 408 F. Supp. 3d at 237-38 (holding that defendants did not recklessly fail to act with reasonable care to mitigate the risk because, after Plaintiff lost her balance and told them that she could not breathe, the defendants promptly called an ambulance and sat Plaintiff down). Moreover, whether Plaintiff should have been decontaminated first or taken directly to the medical clinic "is [a] difference of opinion regarding what constitutes an appropriate response

---

[7] At most, it took Plaintiff three and a half hours to be seen by physician's assistant Larry Blackmore at the clinic, JSF, at ¶¶ 29, 55, 57.

and treatment," but in no way constitutes a constitutional violation.  <u>Baltas</u>, 2019 U.S. Dist. LEXIS 141833, at *23. Furthermore, the fact that Plaintiff was not seen in the clinic until later that morning was reasonable, as Plaintiff admits that once he had finished his decontamination shower, he was "relieved." 56.1, at ¶ 20.

### POINT IV:  DEFENDANTS ARE, IN ANY EVENT, ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity protects government officials from civil liability where performance of their discretionary functions "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted). To be clearly established, for these purposes, a legal principle must be settled law.  <u>See</u> <u>District of Columbia v. Wesby</u>, 138 S. Ct. 577, 589 (2018).  "The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." <u>Id</u>. at 590. Courts must look to whether the right in question was defined with specificity, whether the binding decisional law supports the existence of the right, and whether, under the law that was then in existence, a reasonable defendant would have understood the unlawful nature of the acts.  <u>See</u> <u>Pena v. Deprisco</u>, 432 F.3d 98, 115 (2d Cir. 2005). The Supreme Court has adamantly held that the right at issue should not be defined at a "high level or generality." <u>See</u> <u>City of Escondido v. Emmons</u>, 139 S. Ct. 500, 503 (2019).

In terms of failure to intervene, "an officer is entitled to qualified immunity unless it was objectively unreasonable for him to believe that his fellow officers' conduct did not violate the plaintiff's rights." <u>Ismael v. Charles</u>, No. 18-CV-3957 (GHW), 2020 U.S. Dist. LEXIS 124292, at *34 (S.D.N.Y. July 15, 2020) (internal quotation marks omitted).

**A.**   **It is Not Clearly Established that the Spray Was Objectively Unreasonable Under Excessive Force or Deliberate Indifference.**

Here, there is no Supreme Court or Second Circuit case law clearly establishing that a corrections officer who deploys a single, short, two-second burst of chemical agent on an unrestrained asthmatic inmate when the inmate physically resisted and repeatedly refused to comply with legitimate orders to be produced to court is objectively unreasonable. JSF, at ¶¶ 37-39, 40-41, 43-45; 56.1, at ¶ 9, 13. Indeed, no Supreme Court or Second Circuit cases "address [using pepper spray on] an unrestrained yet uncooperative inmate who was not physically threatening officers." Ismael, 2020 U.S. Dist. LEXIS 124292, at *30. Conversely, there are an abundance of cases that conclude that using a limited amount of chemical agent on an unrestrained yet uncooperative inmate is, indeed, objectively reasonable.  See, e.g., Frost v. Davis, No. 17-CV-8418 (VLB), 2019 U.S. Dist. LEXIS 160096, at *19-*20 (S.D.N.Y. Sept. 18, 2019) (concluding that the defendants' single burst of chemical agent was objectively reasonable under the Fourteenth Amendment because Plaintiff ignored and refused to comply with the defendants' orders); Vazquez v. Spear, No. 12-CV-6883 (VLB), 2014 U.S. Dist. LEXIS 113018, at *10 (S.D.N.Y. Aug. 5, 2014) (dismissing a Fourteenth Amendment excessive force claim where the defendant officer used chemical agent after Plaintiff "refused to comply with orders to be handcuffed"). Because it was not clearly established that deploying a single, short, two-second burst of chemical agent on an unrestrained asthmatic inmate when the inmate physically resisted and repeatedly refused to comply with legitimate orders to be produced to court is objectively unreasonable under excessive force or deliberate indifference, Defendants George and Genoves are entitled to qualified immunity on this claim.

**B.      It is Not Clearly Established that an Eight Minute Wait in Decontamination or Three and a Half Hour Wait in Being Seen at the Clinic Constitutes Deliberate Indifference to Medical Needs.**

Moreover, no Supreme Court or Second Circuit case clearly establishes that a either an eight minute wait to be decontaminated or a three and a half hour wait to be seen at the

medical clinic, after an inmate has been decontaminated and is "relieved," is objectively unreasonable. Conversely, several cases hold that such circumstances do not give rise to constitutional violations. See, e.g., Liverpool, 442 F. Supp. 3d at 737 (granting defendant's motion for summary judgment on the delay of medical needs claim because Plaintiff had no evidence that his condition worsened after he was exposed to OC spray and human waste and had to wait three hours to receive medical attention); Walton, 2019 U.S. Dist. LEXIS 28760, at *46 (dismissing a claim for delay in treatment because no evidence indicated that "the temporary delay in Walton's treatment had any impact whatsoever on his recovery or his health, let alone of a degenerative or extreme magnitude"); Blond, 2010 U.S. Dist. LEXIS 114267, at *13 (holding that a thirty to sixty minute delay in the ability to rinse his eyes after being sprayed with pepper spray did not constitute a serious medical need because Plaintiff failed to allege what harm resulted in the delay). As such, because it was not clearly established that either an eight minute wait to decontaminate or three hour wait to be seen at a medical clinic, after an inmate has been decontaminated and is "relieved," is objectively unreasonable, Defendants George and Genoves are entitled to qualified immunity on this claim.

## C.     It Was Not Objectively Unreasonable for Defendants Not to Intervene.

Moreover, that Defendants George and Genoves did not attempt to prevent Defendant Willis from spraying Plaintiff is not objectively unreasonable.  As discussed above, it was unclear that Defendant Willis would end up following through on his warning that he would spray Plaintiff until he actually sprayed Plaintiff.  See supra, point I.A.1.  Thus, at the very least, officers of reasonable competence could have believed that spray would likely not be used and, therefore, it was unnecessary to take any steps to prevent it.  Second, as discussed in Defendant Willis' motion for summary judgment, Defendant Willis' use of pepper spray was not objectively unreasonable Def. Willis Br. 21. As such, qualified immunity extends to Defendants

George and Genoves on Plaintiff's claim for failure to intervene. See Holland v. City of New York, 197 F. Supp. 3d 529, 549-50 (S.D.N.Y. 2016) (granting qualified immunity to the failure to intervene defendants because it qualified immunity applies equally from the defendant alleged to have committed the underlying constitutional violation).[8]

## CONCLUSION

For the reasons set forth herein, defendants' motion for summary judgment should be granted in all respects.

Dated:          New York, New York
                December 24, 2020

                                    JAMES E. JOHNSON
                                    Corporation Counsel of the City of New York
                                    *Attorney for Defendants City, Genoves, and George*
                                    100 Church Street
                                    New York, NY  10007


                        By:    *Joshua A. Weiner*
                               Joshua A. Weiner[9]

---

[8] Additionally, Defendants George and Genoves should be granted qualified immunity because several cases hold that two seconds is too quick to provide a realistic opportunity to intervene and, therefore, is not objectively unreasonable. See *supra* I.A.2.

[9] This case has been assigned to Assistant Corporation Counsel Aaron Davison, who passed the New York State Bar Exam and is presently applying for admission. Mr. Davison is handling this matter under supervision and may be reached at (646) 988-3220 or adavison@law.nyc.gov.