16 CIV 6704 (PAE) (KNF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTOINE ROSS,

Plaintiff,

-against-

CAPTAIN DION WILLIS, ET AL.,

Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

***JAMES E. JOHNSON***
*Corporation Counsel of the City of New York*
*Attorney for Defendants George and Genoves*
*100 Church Street*
*New York, N.Y.  10007*
*Of Counsel:  Joshua A. Weiner*
*Tel:  (212) 356-2249*
*Matter No.:  2017-015664*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT

       POINT I:   PLAINTIFF'S ATTEMPT TO HOLD DEFENDANTS GEORGE AND GENOVES LIABLE AS DIRECT PARTICIPANTS FAILS.......................................................................... 2

       POINT II:   PLAINTIFF FAILS TO RAISE ANY DISPUTED ISSUES OF MATERIAL FACT AS TO HIS FAILURE TO INTERVENE CLAIM. .................................................. 5

          A. Defendants George and Genoves Did Not Have "Reason to Know" of Any Constitutional Violation by Captain Willis. ................................................ 5

          B. Defendants George and Genoves Did Not Have a Reasonable Opportunity to Intervene.................................................. 6

          C. Defendants George and Genoves Are Entitled to Qualified Immunity................................................................ 7

       POINT III:   PLAINTIFF'S EXCESSIVE FORCE AND DELIBERATE INDIFFERENCE CLAIMS FAIL. ................................................. 8

          A. Plaintiff Cannot Dispute That He Resisted Defendants' Attempts to Handcuff Him. ................................................ 8

          B. Defendants Are Entitled to Qualified Immunity on Plaintiff's Excessive Force Claim................................................... 10

          C. Defendants Are Entitled to Qualified Immunity on Plaintiff's Deliberate Indifference Claim....................................... 13

CONCLUSION.................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                                      **Pages**

Ashcroft v. al-Kidd,
    563 U.S. 731 (2011)................................................................................................13

Brown v. City of New York,
    862 F.3d 182 (2d Cir. 2017)...............................................................................11, 15

Callahan v. Wilson,
    863 F.3d 144 (2d Cir. 2017)...............................................................................15

City & Cnty. of San Francisco v. Sheehan,
    135 S. Ct. 1765 (2015).......................................................................................13

Creighton v. City of New York,
    No. 12 Civ. 7454 (PGG), 2017 U.S. Dist. LEXIS 21194
    (S.D.N.Y. Feb. 14, 2017)....................................................................................9

Curley v. Village of Suffern,
    268 F.3d 65 (2d Cir. 2001)..................................................................................5

Davis v. Rinaldi,
    No. 19-CV-504 (CSH), 2019 U.S. Dist. LEXIS 215346
    (D.Conn. Oct. 31, 2019).....................................................................................14

District of Columbia v. Wesby,
    138 S. Ct. 577 (2018).........................................................................................8

F.D.I.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh,
    205 F.3d 66 (2d Cir. 2000)..................................................................................9

Faruki v. City of New York,
    No. 10 Civ. 9614 (LAP), 2012 U.S. Dist. LEXIS 47310
    (S.D.N.Y. Mar. 30, 2012) ..................................................................................9

Figueroa v. Mazza,
    825 F.3d 89 (2d Cir. 2016)..................................................................................6

Garcia v. Dutchess County,
    43 F. Supp. 3d 281 (S.D.N.Y. 2014)..................................................................12

Girbes-Pierce v. City of New York,
    No. 16-CV-7510 (JLC), 2019 U.S. Dist. LEXIS 60559
    (S.D.N.Y. Apr. 9, 2019).....................................................................................12

**Cases**                                                                                          **Pages**

Hayes v. New York City Police Dep't,
    212 Fed. Appx. 60 (2d Cir. 2006) ......................................................................................7

Helling v. McKinney,
    509 U.S. 25 (1993) ........................................................................................................13

Henry v. Dinelle,
    No. 10-CV-0456 (GTS) (DEP), 2011 U.S. Dist. LEXIS 136583
    (N.D.N.Y. Nov. 29, 2011) ...........................................................................................5, 6

Ismael v. Charles,
    No. 18-CV-3957 (GHW), 2020 U.S. Dist. LEXIS 124292
    (S.D.N.Y. July 15, 2020) ..............................................................................................11

Jones v. Treubig,
    963 F.3d 214 (2d Cir. 2020) .....................................................................................11, 12

Kingsley v. Hendrickson,
    576 U.S. 389 (2015) ......................................................................................................13

Lewis v. Clarkstown Police Dep't,
    No. 11-CV-2487 (ER), 2014 U.S. Dist. LEXIS 45885
    (S.D.N.Y. Mar. 31, 2014) .........................................................................................12-13

O'Neill v. Krzeminski,
    839 F.2d 9 (2d Cir. 1988) ...............................................................................................7

Pabon v. Wright,
    459 F.3d 241 (2d Cir. 2006) ..........................................................................................12

Pearson v. Callahan,
    555 U.S. 223 (2009) ........................................................................................................7

Riley v. Town of Bethlehem,
    44 F. Supp. 2d 451 (N.D.N.Y. 1999) ..............................................................................2

Rizk v. City of New York,
    No. 14-CV-6434 (RRM) (RER), 2020 U.S. Dist. LEXIS 90918
    (E.D.N.Y. May 22, 2020) ..............................................................................................14

Roach v. Okun,
    No. 13-CV-866 (TJM) (DJS), 2017 U.S. Dist. LEXIS 87496
    (N.D.N.Y. June 6, 2017) ...............................................................................................10

Sandin v. Conner,
    515 U.S. 472 (1995) ......................................................................................................14

**Cases**                                                    **Pages**

Saucier v. Katz,
    533 U.S. 194 (2001)................................................................................................7

Scoma v. City of New York,
    No. 16-CV-6693 (KAM) (SJB), 2021 U.S. Dist. LEXIS 12727
    (E.D.N.Y. Jan. 22, 2021) .............................................................................. 10-11

Smith v. Sawyer,
    435 F. Supp. 3d 417 (N.D.N.Y. 2020) ...................................................................7

Soto v. Gaudett,
    862 F.3d 148 (2d Cir. 2017)................................................................................12

Terebesi v. Torreso,
    764 F.3d 217 (2d Cir. 2014).............................................................................2, 3

Tracy v. Freshwater,
    623 F.3d 90 (2d Cir. 2010).................................................................................11

Wright v. Trapasso,
    No. 15-CV-4428 (MKB), 2018 U.S. Dist. LEXIS 168812
    (E.D.N.Y. Sept. 28, 2018)....................................................................................7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ANTOINE ROSS,

                                        Plaintiff,

                -against-                                16 Civ. 6704 (PAE) (KNF)

CAPTAIN DION WILLIS, ET AL.,

                                        Defendants.

------------------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Plaintiff's opposition fails to raise disputed issues of material fact necessary to defeat Defendants Rochaurd George and Sadoc Genoves's motion for summary judgment. Unsurprisingly, the bulk of Plaintiff's opposition is devoted to establishing the liability of Defendant Captain Dion Willis, since nothing in the record establishes any unconstitutional acts by Defendants George and Genoves. And in those few pages where Plaintiff attempts to ascribe liability to Defendants George and Genoves, he fails.

*First*, because Defendants George and Genoves undoubtedly did not spray Plaintiff or "allow or assist" Captain Willis in doing so, Plaintiff cannot proceed against Defendants George and Genoves on a direct participation theory. *Second*, Plaintiff fails to cite any authority clearly establishing that Defendants George and Genoves had "reason to know" that Captain Willis would spray Plaintiff in advance of when Captain Willis actually deployed the spray and, accordingly, Defendants are entitled to qualified immunity. *Third*, Plaintiff cannot genuinely dispute that he resisted Defendants' attempt to handcuff him. Plaintiff, admittedly, does not remember if he resisted or not, and in the face of Defendant Willis's memory that he did resist,

Plaintiff cannot manufacture a disputed issue on this point.  The fact that Plaintiff actively resisted, combined with his threats to Defendants and the fact that he was unrestrained, precludes any claim for excessive force or deliberate indifference.  *Fourth*, the cases Plaintiff cites in opposition to qualified immunity on the excessive force claim are inapposite, as those cases concern plaintiffs who, unlike Plaintiff here, were not resisting and threatening and who were subdued.  *Fifth,* and finally, Plaintiff fails to cite *any* authority that would clearly establish that Captain Willis was deliberately indifferent to Plaintiff's medical needs.[1]

## ARGUMENT

## POINT I:  PLAINTIFF'S ATTEMPT TO HOLD DEFENDANTS GEORGE AND GENOVES LIABLE AS DIRECT PARTICIPANTS FAILS.

It is undisputed that Defendants George and Genoves did not use any force against Plaintiff. (JSF ¶ 44.) Nevertheless, Plaintiff attempts to hold Defendants George and Genoves liable on a "direct participation theory," but has not adduced even a shred of evidence in support of such claim. Plaintiff mistakenly relies on a single case, Terebesi v. Torreso, 764 F.3d 217 (2d Cir. 2014). In Terebesi, Plaintiff alleged that four defendants were liable for excessive force based on the use of stun grenades. See id. at 236. There, it was undisputed that one of the defendants, Officer Phillipson, did not actually throw a stun grenade. Id. at 236 n.19. However, the Second Circuit held that Phillipson could be held liable as a direct participant because he "broke a window at the rear of the house and separated the curtains in order to allow the other officers to toss in their grenades." Id. According to Plaintiff, Terebesi stands for the proposition that "the merest act of participation renders each officer a direct participant in excessive force." (Pl. Opp. at 47.)  This reading is overly broad.  Rather, Terebesi stands only for the proposition

---

[1] Plaintiff did not oppose Defendants' arguments that the delay in medical care claim should be dismissed. Therefore, any such claim should be deemed abandoned. See Riley v. Town of Bethlehem, 44 F. Supp. 2d 451, 466 (N.D.N.Y. 1999) (dismissing several claims because "[p]laintiff does not address any of these claims in her opposition papers, leading me to believe that she has abandoned them").

that an act that "allow[s]" or "assist[s] . . . an unlawful act" by another officer constitutes direct participation. See Terebesi, 764 F.3d at 236 n.19.

Here, Plaintiff contends that Defendants George and Genoves (1) were members of the probe team, (2) wore riot gear, (3) blocked the exit and barricaded plaintiff in his cell, (4) ordered plaintiff to "get up," and (5) attempted to grab plaintiff's arm to place him in handcuffs. (See Pl. Opp. at 48.)  However, none of these facts allowed or assisted Defendant Willis to spray Plaintiff. Notably, Plaintiff fails to identify any case law where merely wearing riot gear or standing inside a cell constitutes direct participation. To the contrary, as stated in Defendants' opening brief, mere presence does not constitute direct participation. (Defs. Br. 17-18.)

Further, Plaintiff's assertion that Defendants George and Genoves "block[ed] the exit and barricad[ed plaintiff] inside" his cell is a gross distortion of the facts.  "Blocked" and "barricaded" imply intentional behavior.  However, Plaintiff has not pointed to any evidence in the record (because there is none) that Defendants George and Genoves intentionally placed themselves in a certain spot in the cell to "block" and "barricade" Plaintiff.  And more importantly, Plaintiff has adduced no evidence that they did so with the intention of having Defendant Willis spray Plaintiff.  In fact, as Plaintiff himself has pointed out, his cell was small and crowded.[2]  Defendants George and Genoves did not place themselves in the cell to intentionally block or barricade plaintiff, they simply stood where they could.

---

[2] For example, Plaintiff points to the following facts: Defendant Genoves testified that "the cell is only maybe eight feet wide," Ross 56.1 ¶ 50; there was approximately "three to four feet" between Plaintiff's bed and his cell door, id. at 51; Defendants Willis, George, Genoves, and non-party correction officer Jordan were in the cell, JSF ¶ 34; and they all remained in the cell until Defendant Willis sprayed Plaintiff, Ross 56.1 ¶ 52.

Finally, telling Plaintiff to "get up"[3] or attempting to place Plaintiff in handcuffs, without more, fails to establish the direct participation of Defendants George and Genoves in spraying Plaintiff. Telling Plaintiff to "get up" so that he could attend his scheduled court appearance did not assist Defendant Willis in spraying Plaintiff. Regarding the attempt by either Defendant George or Genoves to place Plaintiff in handcuffs, such attempt failed because Plaintiff pulled his arm away. (Defs. 56.1 ¶ 9.) The fact that Defendants tried, but failed, to handcuff Plaintiff did not allow or assist Defendant Willis in spraying Plaintiff.

Plaintiff also alleges that Defendants George and Genoves directly participated in deliberate indifference as against Plaintiff because they "[e]ach participated in the probe team's removal of [Plaintiff] from his cell without contacting mental health services or requesting [Plaintiff's] contraindicators prior to using chemical agent. (Pl. Opp. at 48.) However, it was Defendant Willis' decision to spray Plaintiff without requesting medical contraindications, and there is no record evidence that Defendants George and Genoves committed any acts that allowed or assisted Defendant Willis in not conducting those checks before spraying Plaintiff.[4]

Because Defendants George and Genoves did not use force against Plaintiff, and Plaintiff has not adduced any evidence that Defendants George and Genoves allowed or assisted Defendant Willis in spraying Plaintiff, Defendants George and Genoves cannot be held liable as direct participants on Plaintiff's claims for excessive force or deliberate indifference.

---

[3] Defendants note that there is also no evidence in the record that anyone, let alone Defendants George and Genoves, said "get up" while in Plaintiff's cell. Indeed, if this were said, it would have been noted in the joint transcript of the video.

[4] Indeed, under DOC policy, it was Captain Willis's responsibility to check for medical contraindications as he was the only member carrying chemical agents. (Chemical Agents Directive 4510R-G, Weiner Decl., Ex. J at DEF_0806) ("Prior to the use of any chemical agent . . . against an inmate, the person responsible for such use shall notify facility health services staff to determine from such staff whether there is a medical reason (contraindications) why chemical agents should not be used.")

**POINT II:  PLAINTIFF FAILS TO RAISE ANY DISPUTED ISSUES OF MATERIAL FACT AS TO HIS FAILURE TO INTERVENE CLAIM.**

> **A.  Defendants George and Genoves Did Not Have "Reason to Know" of Any Constitutional Violation by Captain Willis.**

As an alterative to his direct participation theory, Plaintiff tries to proceed against Defendants George and Genoves on a failure to intervene theory. But assuming for the sake of argument that Defendant Willis spraying Plaintiff amounted to excessive force, Plaintiff's failure to intervene claim fails because Defendants George and Genoves did not "have reason to know" Plaintiff *would* be sprayed until Captain Willis actually deployed the spray.  Under Second Circuit precedent, to be liable under a failure to intervene theory, an officer must have "reason to know that [excessive force] *will* be" used for liability to attach.  Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001) (emphasis added).  "Will" is the operative word.[5]  Defendants George and Genoves could not have had "reason to know" that Plaintiff would not comply with orders to cooperate or that Defendant Willis *would* follow through with his warning to spray Plaintiff until Plaintiff defied that warning. To the contrary, Defendant George had reason to believe that Defendant Willis might not spray Plaintiff even if Plaintiff did not comply. (Defs. 56.1 ¶ 10.)

Further, Plaintiff's attempt to distinguish Henry v. Dinelle, No. 10-CV-0456 (GTS) (DEP), 2011 U.S. Dist. LEXIS 136583, at *30-*32 (N.D.N.Y. Nov. 29, 2011), is unavailing. According to Plaintiff, in Henry the threat of force was "generalized" and conditioned on "conflicting instructions." (Pl. Opp. at 43.) But Plaintiff's argument misses the mark. The court in Henry dismissed the claims against the bystander officer because "the use of force was too uncertain," which plainly means that it was uncertain as to whether the officer in question would

---

[5] The Cambridge Dictionary defines "will" as being "used to talk about what is going to happen in the future especially *things that you are certain about* or things that are planned." *Will*, Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/will (last visited Jan. 26, 2021) (emphasis added).

follow through on his threat to use force on the plaintiff until the officer actually used force.[6]

Here, like in <u>Henry</u>, the threat—"I need to take you out or I'm gonna spray you[;] I'm gonna

give you one more opportunity"—did not give Defendants George and Genoves "reason to

know" that force *would* be used.

### B. Defendants George and Genoves Did Not Have a Reasonable Opportunity to Intervene.

Plaintiff argues that the factors identified in <u>Figueroa v. Mazza</u>, 825 F.3d 89 (2d Cir.

2016), show that Defendants George and Genoves had a "realistic opportunity to intervene." (Pl.

Opp. at 44.)   As an initial matter, Plaintiff argues that the duty to intervene existed in the ten

seconds between when Captain Willis warned Plaintiff that he would be sprayed and when

Plaintiff was sprayed, yet Plaintiff fails to cite to any case law finding that a failure to intervene

claim can be premised on such a minute period of time.

Plaintiff argues that the duty to intervene arose when the threat of force was issued by

Defendant Willis and/or during the ten seconds between the warning and when Plaintiff was

sprayed. As to the duty arising upon the issuance of the threat, as stated *supra* and in Defendants'

opening brief, there was no "reason to know" that force would be used until the very moment

Defendant Willis sprayed Plaintiff and, accordingly, Plaintiff cannot establish a failure to

intervene claim based on the warning itself.  (Defs. Br. 7-10.)  As to the ten seconds between

when Defendant Willis warned Plaintiff that he would be sprayed and when Plaintiff was

sprayed, as an initial matter, Plaintiff fails to cite to any case law finding that a failure to

intervene claim can be premised on such a minute period of time. Regardless, Plaintiff's

---

[6] Plaintiff fails to point out that it was the plaintiff in <u>Henry</u>, not the bystander officer, who perceived the officers' instructions to be conflicting. Any confusion by the plaintiff would not have affected the Court's analysis of whether the bystander officer had reason to know that force would be used.  2011 U.S. Dist. LEXIS 136583, at *31-*32. Moreover, Plaintiff's attempt to distinguish <u>Henry</u> on the grounds that the nature of the threat was less specific than it is here is a distinction without a difference.  The threat to "f*** up" a prisoner, like the threat to use spray, constitutes a threat to use a significant degree of force on a prisoner.

assertion as to why the ten-second time period was sufficient for Defendants George and Genoves to intervene makes little sense. In a bit of verbal gymnastics, Plaintiff contends that because Captain Willis had made up his mind both that he would spray and that ten seconds was enough time to allow Plaintiff to comply before spraying that Defendants George and Genoves *must* have known Captain Willis's intentions and could have said "stop."  (Pl. Opp. at 44.)  But, obviously, Defendants George and Genoves could not have read Defendant Willis's mind to know that the warning was anything but an empty threat and/or the specific point at which he decided that Plaintiff's opportunity to comply with the warning had expired and it was time to resort to using spray—indeed, Plaintiff points to no concrete evidence demonstrating otherwise.[7] Plaintiff has simply failed to establish a viable failure to intervene claim against Defendants George and Genoves.

### C.  Defendants George and Genoves Are Entitled to Qualified Immunity.

"[T]he question posed by the qualified immunity inquiry is whether the officer made a 'reasonable mistake[] as to the legality of [his] action.'"  Hayes v. New York City Police Dep't, 212 Fed. Appx. 60, 62 (2d Cir. 2006) (summary order) (quoting Saucier v. Katz, 533 U.S. 194, 206 (2001)). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  Pearson v. Callahan, 555 U.S. 223, 231 (2009).

---

[7] And, of course, Plaintiff does not argue that Defendants George and Genoves could have prevented Defendant Willis from using force in the time period beginning when Defendant Willis first deployed the spray and ending approximately two seconds later when the spray burst had concluded. Those few seconds, as a matter of law, were insufficient to allow Defendants George and Genoves to intervene. See, e.g, O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988) (noting that "three blows [that occurred] in such rapid succession . . . [is] not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator"); Smith v. Sawyer, 435 F. Supp. 3d 417, 425, 438 (N.D.N.Y. 2020) (granting summary judgment for defendant Sawyer in regards to two shots fired by defendant Riley given the fast paced nature of the encounter, even though defendants Sawyer and Riley were both positioned on the driver's side of the of the car near the driver's door); Wright v. Trapasso, No. 15-CV-4428 (MKB), 2018 U.S. Dist. LEXIS 168812, at *23-*24 (E.D.N.Y. Sept. 28, 2018) (holding that there was no reasonable opportunity to intervene where pepper spray was deployed instantaneously).

Here, at minimum, Defendants George and Genoves are entitled to qualified immunity because any mistake of law or fact was reasonable. In terms of a factual mistake, it was reasonable for Defendants George and Genoves to believe that Defendant Willis would not ultimately spray Plaintiff. That is because a reasonable officer could have expected Plaintiff to comply once the warning was issued. It, therefore, was reasonable for Defendants George and Genoves not to have taken action to prevent Defendant Willis from spraying Plaintiff during the ten seconds Defendant Willis gave Plaintiff to heed his warning. Indeed, Defendant George testified that he believed that there was a chance that Plaintiff *would* comply once the warning was given, thus obviating the need for any use of force. (Defs. 56.1 ¶ 10.) In terms of a mistake of law, it was reasonable for Defendants George and Genoves to believe that there was no duty to intervene upon the issuance of a mere threat of force. In fact, Plaintiff does not cite *a single case*, much less a federal circuit or U.S. Supreme Court case, for the proposition that a duty to intervene arises where, as here, a fellow officer warns that force will be used if a prisoner does not heed the warning. It follows that such duty is not "clearly established" under the law. See District of Columbia v. Wesby, 138 S. Ct. 577, 589-90 (2018) (stating that, to be clearly established, legal principle must be "clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply"). Defendants George and Genoves, therefore, are entitled to qualified immunity.

## POINT III:  PLAINTIFF'S EXCESSIVE FORCE AND DELIBERATE INDIFFERENCE CLAIMS FAIL.

### A. Plaintiff Cannot Dispute That He Resisted Defendants' Attempts to Handcuff Him.

Plaintiff contends that "[a]t a minimum, genuine disputes of material fact, including disputes about whether Mr. Ross resisted . . . preclude both summary judgment and qualified immunity on Mr. Ross's excessive-force claim." (Pl. Opp. at 2; see id. at 19 ("[D]isputed facts

prevent summary judgment on that issue. Although defendants assert Mr. Ross pulled his arm away, Mr. Ross testified that he does not remember doing so or otherwise resisting in any way.").) Plaintiff is wrong. Plaintiff readily concedes that he "does not remember" if he pulled his arm away when either Defendant George or Genoves attempted to place him in handcuffs. (Pl. Opp. at 7-8.) But Defendant Willis *does* remember Plaintiff's resistance, testifying at his deposition that he "ha[d his] staff grab [Plaintiff's] arms to – to apply cuffs" but Plaintiff "pulled away[.]" (See Defs. 56.1 ¶ 9.) Plaintiff's claimed lack of recollection cannot create a dispute of material fact in the face of Defendant Wills's unequivocal testimony. See Creighton v. City of New York, No. 12 Civ. 7454 (PGG), 2017 U.S. Dist. LEXIS 21194, at *106-07 (S.D.N.Y. Feb. 14, 2017) (holding that no issue of fact exists when one party has no recollection but another has a recollection); Faruki v. City of New York, No. 10 Civ. 9614 (LAP), 2012 U.S. Dist. LEXIS 47310, at *13 (S.D.N.Y. Mar. 30, 2012) ("Plaintiff's statement that she did not recall whether Defendants asked her to leave the store is insufficient to create a genuine dispute on that material issue."); see also F.D.I.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 205 F.3d 66, 75 (2d Cir. 2000) ("[V]ague denials and memory lapses do not create genuine issues of material fact.").

That Plaintiff resisted Defendants' attempt to handcuff him is further corroborated by Plaintiff's own statements that were captured on video. At one point in the video, Plaintiff threatens the officers, saying "do not touch me, bro; do not touch me, bro; bro, do not touch me, son; grabbing me . . . grabbin' my arm while I'm on drugs, boy; what's wrong with you, boy; is you crazy;" and "what's wrong with you, son."  (JSF at ¶ 40.)  Repeatedly telling Defendants "do not touch me" and referring to officers grabbing his arm further substantiates the fact that Plaintiff was physically resisting attempts to place him into handcuffs.  Plaintiff's claimed lack

of memory cannot create a dispute of fact based on the unequivocal testimony of Defendant

Willis and Plaintiff's audio-captured statements.

### B. Defendants Are Entitled to Qualified Immunity on Plaintiff's Excessive Force Claim.

Plaintiff argues that defendants are not entitled to qualified immunity for the excessive

force claim because "it was clearly established that the use of chemical agent on someone who is

not actively resisting or posing a threat to the officers is excessive force, and Mr. Ross was

neither actively resisting nor a threat." (Pl. Opp. at 27.). Plaintiff, however, is mischaracterizing

the record and the cases he cites are inapposite.

With regard to the excessive force claim against Defendant Willis, and derivatively

against Defendants George and Genoves, as set forth above,[8] there is no genuine issue of

material fact that Plaintiff pulled his arm away when a member of the probe team attempted to

place him in handcuffs. (Defs. 56.1 ¶ 9.) Additionally, Plaintiff yelled "don't touch me" and

"what's wrong with you" at Defendants. (JSF ¶¶ 39-40.) These words constituted implied threats

to take physical action if Defendants continued to attempt to physically remove Plaintiff from his

cell.[9] Further, Plaintiff was a maximum custody inmate housed in "Enhanced Supervision

Housing," (Defs. 56.1 ¶ 1; JSF ¶ 5); repeatedly refused to comply with legitimate orders from the

probe team, (JSF ¶¶ 37-39, 43); and, finally, was unrestrained at the time of the spray, (JSF ¶

45). Together, these undisputed facts show that Plaintiff, at least arguably, was actively resisting

and posed a threat. See Scoma v. City of New York, No. 16-CV-6693 (KAM) (SJB), 2021 U.S.

---

[8] See supra point III.A.

[9] Plaintiff points to several statements by Defendants that they did not consider Plaintiff a threat. (Pl. Opp. 16.) These statements, however, are immaterial to the excessive force analysis. See Roach v. Okun, No. 13-CV-866 (TJM) (DJS), 2017 U.S. Dist. LEXIS 87496, at *10 (N.D.N.Y. June 6, 2017) ("Because of the objective nature of the test, a plaintiff's allegations regarding a defendant's subjective motivation are irrelevant."). Additionally, Plaintiff's contention is inaccurate since Defendant Genoves indicated that he believed Plaintiff was "somewhat of a threat." (Defs. 56.1 ¶ 8.)

Dist. LEXIS 12727, *27-*28 (E.D.N.Y. Jan. 22, 2021) (holding that plaintiff was considered to be actively resisting by being noncompliant, uncooperative, and unrestrained).

As such, it cannot be seriously disputed that Defendant Willis, and by extension Defendants George and Genoves, are entitled to qualified immunity. See Brown v. City of New York, 862 F.3d 182, 190 (2d Cir. 2017) (affirming the District Court's grant of qualified immunity because it was not clearly established that repeated use of pepper spray, using hands to push Plaintiff's face into the ground, and kicking his legs out from under him was objectively unreasonable on a person "repeatedly refusing to follow the instructions of police officers who were attempting to apply handcuffs to accomplish an arrest"). In fact, the bar for qualified immunity is far lower than the facts presented here. See Scoma, 2021 U.S. Dist. LEXIS 12727, *40-*42 (granting qualified immunity because it was not clearly established that using a taser on a "plaintiff [that] was unrestrained, non-compliant, and reasonably perceived as threatening to a reasonable officer on the scene" was objectively unreasonable); Ismael v. Charles, No. 18-CV-3957 (GHW), 2020 U.S. Dist. LEXIS 124292, at *30-*31 (S.D.N.Y. July 15, 2020) (explaining that it is not clearly established that using pepper spray on an unrestrained inmate who "did not physically resist or threaten any of the officers" but "disobeyed multiple direct orders").

Plaintiff argues that Jones v. Treubig, 963 F.3d 214 (2d Cir. 2020) precludes qualified immunity because it "rejected the argument that Tracy v. Freshwater, 623 F.3d 90 (2d Cir. 2010), applied only to handcuffed arrestees." (Pl. Opp. 27.) But Jones is inapposite here. The holding in Jones—denying qualified immunity for the use of a taser on an unrestrained individual who no longer resisted and was no longer threatening—dealt with a *second*, *additional* use of force once Plaintiff had been subdued[10] by the first use of force. See Jones, 963 F.3d at 238 (emphasis

_____

[10] Plaintiff's contention that he was "subdued" because he was drowsy from his medication, (Pl. Opp. 18, 29), does not affect the excessive force analysis, as being drowsy from medication does not preclude an inmate from resisting

added). However, it is undisputed that Defendant Willis sprayed Plaintiff just one time while Plaintiff was still unrestrained.[11] (Defs. 56.1 ¶ 13; JSF ¶¶ 44-45.) Moreover, unlike the plaintiff in Jones, Plaintiff was actively resisting, Defs. 56.1 ¶ 9, making threats, JSF ¶ 40, and refusing to comply with legitimate orders, JSF ¶¶ 37-39, 43, at the time of the spray.

Finally, Plaintiff's citations to three district court cases, Pl. Opp. 29, do nothing to defeat qualified immunity. See Pabon v. Wright, 459 F.3d 241, 255 (2d Cir. 2006) ("When neither the Supreme Court nor this court has recognized a right, the law of our sister circuits and the holdings of district courts cannot act to render that right clearly established within the Second Circuit."). Regardless, these cases deal with uses of force *after* an individual was restrained in some way and no longer resisting and, therefore, are inapplicable. In Garcia v. Dutchess County, qualified immunity was rejected, in part, for the use of a taser on a suspect after he was "largely subdued on the floor" and officers "had largely restrained Healy by holding different parts of Healy's body or sitting on top of him[.]" 43 F. Supp. 3d 281, 293, 298 (S.D.N.Y. 2014). In Girbes-Pierce v. City of New York, the court rejected qualified immunity because the plaintiff was pepper-sprayed "after he was forced to the ground, after [two defendants] had a hold on him with their weight, hands, and knees, and when he was not trying to get off the ground." No. 16-CV-7510 (JLC), 2019 U.S. Dist. LEXIS 60559, at 17 (S.D.N.Y. Apr. 9, 2019). Finally, in Lewis v. Clarkstown Police Dep't, the court denied summary judgment because the defendant used OC gel on an inmate who was confined to his cell. No. 11-CV-2487 (ER), 2014 U.S. Dist. LEXIS

---

or threatening officers.  Moreover, there is no record evidence that Defendants knew or should have known Plaintiff was drowsy; Plaintiff merely informed Defendants that he was "on drugs." (JSF ¶ 40.)

[11] For this reason, Soto v. Gaudett, 862 F.3d 148 (2d Cir. 2017), is also inapposite. The court's holding with regards to an un-handcuffed individual dealt with "two different officers who tased the suspect a *second* time. . . ." Jones, 963 F.3d at 238 (discussing Soto) (emphasis added). Indeed, the defendant was granted qualified immunity for the first use of force on the un-handcuffed individual, albeit different from this case. Id. ("In Soto, we held that one officer, who tased a fleeing suspect, was entitled to qualified immunity as a matter of law.").

45885, at *22-*23 (S.D.N.Y. Mar. 31, 2014).[12]   By contrast, here, Plaintiff was actively resisting, making threats, flouting commands, and was unrestrained.

### C. Defendants Are Entitled to Qualified Immunity on Plaintiff's Deliberate Indifference Claim.[13]

Plaintiff argues that Defendant Willis is not entitled to qualified immunity because, under Helling v. McKinney, 509 U.S. 25, 28 (1993), and its progeny "[i]t was clearly established that knowing or reckless exposure to hazardous substances can constitute deliberate indifference."  In doing so, Plaintiff utterly ignores the Supreme Court's clear guidance "not to define clearly established law at a high level of generality."  Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011).  To wit, Plaintiff provides no case law illustrating the specific facts under which an officer's decision to use spray on an inmate before checking medical contraindications is "clearly established" as unconstitutional.  Under Plaintiff's theory, a court could simply deny qualified immunity without reference to any Supreme Court or circuit court case putting a defendant on notice that his actions were unconstitutional.   To do so would eviscerate the entire doctrine of qualified immunity.  See City & Cnty. of San Francisco v. Sheehan, 135 S. Ct. 1765, 1776 (2015)

---

[12] Defendants also note that Plaintiff's reliance on police cases in opposition to qualified immunity is inapposite, as court generally afford correction officers more leeway than police officers in weighing whether their force was reasonable.  See, e.g., Kingsley v. Hendrickson, 576 U.S. 389, 399 (2015) (stating that "[r]unning a prison is an inordinately difficult undertaking" and that "safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face") (internal quotations and citations omitted).

[13] Arguing that Defendants have abandoned their qualified immunity argument as to deliberate indifference, Plaintiff asserts that Defendants George and Genoves "cite[d] no deliberate-indifference-specific case law for their argument that it was not clearly established that spraying Mr. Ross under the circumstances was deliberate indifference." (Pl. Opp. 37-38.) Plaintiff implies, therefore, that Defendants George and Genoves must prove a negative in order to not have abandoned their argument. That is nonsensical and, contrary to Plaintiff's assertion, Defendants George and Genoves readily argued in their opening brief that spraying Plaintiff while he was unrestrained, actively resisting, and refusing to comply with legitimate orders was not clearly established as objectively unreasonable. (Defs. Br. 22-23.) In fact, Plaintiff's failure to cite a case illustrating the specific facts under which an officer's decision to use spray on an inmate before checking medical contraindications is "clearly established" as unconstitutional substantiates Defendants George and Genoves's position.

13

("Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures.").

Finally, Plaintiff's argument—that "'a reasonable person would have understood' that failing to follow DOC policy requiring him to check for contraindicators when the situation was not an emergency "poses a risk of damage to [the victim's] future health'"—purports to deny qualified immunity based on a prison regulation that does not confer constitutional rights. See Sandin v. Conner, 515 U.S. 472, 481-82 (1995) ("[A] prison regulation primarily designed to guide correctional officials in the administration of a prison" is "not designed to confer rights on inmates"); Davis v. Rinaldi, No. 19-CV-504 (CSH), 2019 U.S. Dist. LEXIS 215346, at *22 (D.Conn. Oct. 31, 2019) ("State prison directives do not confer any constitutionally protected rights on inmates and Fourteenth Amendment due process protections are not implicated by the defendants' alleged failure to comply with administrative directives." (internal quotation marks omitted)).[14] Indeed, this faulty premise is intertwined in many of Plaintiff's arguments that Defendant Willis could (and should) have acted differently. (See, e.g., Pl. Opp. 20 ("Captain Willis did not check if the sedation Mr. Ross complained of could excuse Mr. Ross from court that day."); id. ("DOC policy in effect on June 14, 2016 required correction officers to take multiple steps to avoid force—and particularly force that poses a danger to a detainee's health— whenever a use of force against a detainee is anticipated in a non-emergency situation."); id. at 22 ("As both DOC policy and its 30(b)(6) witness made clear, a number of alternatives to the use of chemical agent were not only available to Captain Willis, but were **required** under the

---

[14] In the same vein, being disciplined for violating DOC policy is not tantamount to the applicable standard here: whether Defendant Willis's actions were objectively unreasonable and/or deliberately indifferent under the Constitution. See Rizk v. City of New York, No. 14-CV-6434 (RRM) (RER), 2020 U.S. Dist. LEXIS 90918, at *28-*29 ((E.D.N.Y. May 22, 2020) ("A violation of the Patrol Guide or departmental policy does not, in and of itself, amount to the violation of a right protected by the Constitution or federal law.").

circumstances.")) However, "what a properly trained officer would or would not have done in a

similar situation" based on directives or regulations is "not relevant to [a Defendant's] liability

on the excessive force claim" or any other constitutional claim at issue. Callahan v. Wilson, 863

F.3d 144, 153 (2d Cir. 2017); see also Brown, 862 F.3d at 192 (rejecting plaintiff's argument that

provisions in the NYPD Patrol Guide can clearly establish a constitutional right).  Defendants,

therefore, are entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons and the reasons in Defendants' moving papers, Defendants

respectfully request that the Court grant their motion for summary judgment in its entirety,

dismiss all of the aforementioned claims with prejudice, and grant such other and further relief as

the Court deems just and proper.

Dated:      New York, New York
            February 1, 2021

JAMES E. JOHNSON
Corporation Counsel of the City of New York
*Attorney for Defendants City, Genoves, and George*
100 Church Street
New York, NY  10007

By:    /s/ *Joshua A. Weiner*
       Joshua A. Weiner[15]

---

[15] This case has been assigned to Assistant Corporation Counsel Aaron Davison, who passed the New York State Bar Exam and is presently applying for admission. Mr. Davison is handling this matter under supervision and may be reached at (646) 988-3220 or adavison@law.nyc.gov.